**Justin AMADOR, Appellant**

v.

**The STATE of Texas.**

**No. PD–0786–06.**

Court of Criminal Appeals of Texas.

April 25, 2007.

W. Troy McKinney, Houston, for Appellant.

Gail Kikawa McConnell, Asst. District Attorney, Conroe, Matthew Paul, State's Attorney, Austin, for State.

## OPINION

COCHRAN, J., delivered the opinion of the Court, in which PRICE, WOMACK, JOHNSON and HOLCOMB, JJ., joined.

Appellant was charged with DWI. He filed a motion to suppress evidence. The trial judge conducted a live hearing on appellant's motion during which he viewed portions of the arresting officer's patrol-car videotape. At some point, the court apparently denied the motion and later denied appellant's motion for reconsideration. Appellant then pled guilty, but appealed the trial court's ruling on his pretrial motion. The court of appeals affirmed the trial court's ruling.[1] It held, in part, that appellant failed to present a complete record on appeal because he successfully objected to the supplementation of the record with the videotape that had not been formally admitted into evidence. Therefore, the court of appeals "assume[d] the videotape of the stop shown in court supports the trial court's inference of reasonable suspicion sufficient to support [appellant's] arrest."[2]

We granted appellant's petition for discretionary review to consider whether the court of appeals erred in "assuming" that the missing videotape supported the trial court's ruling.[3] We agree with appellant

---

1. *Amador v. State,* 187 S.W.3d 543 (Tex.App.-Beaumont 2006).

2. *Id.* at 549.

3. We granted both of appellant's grounds for review:

1) In resolving the claim that there was not probable cause to arrest, the court of appeals erred in considering the videotape that was not admitted into evidence in the trial court and that was not part of the appellate record.

that a reviewing court cannot speculate about the contents of exhibits that are not contained in the appellate record. Because the trial judge is in the best position to resolve the parties' dispute concerning what portions of the videotape he actually saw and used in making his ruling, we vacate the judgment of the court of appeals and remand the case to that court for further proceedings.

## I.

After appellant was charged with DWI, he filed several motions to suppress evidence. One of those motions claimed that he was seized "without any reasonable suspicion that he was engaged in criminal activity" and that "[t]he acquisition of the evidence which the Government will offer in this cause was not pursuant to search warrant, was absent exigent circumstances, and made without probable cause to believe the Defendant was engaged in criminal activity or that such evidence, if any, was in danger of being destroyed."

The trial court held a hearing on this motion to suppress. Appellant called DPS Trooper Alicia Fountain, the arresting officer, and played portions of her patrol-car videotape to challenge his "prolonged" detention. Appellant did not have the videotape marked, and he told the trial judge that it was not necessary to have a reporter's record of the words spoken on the videotape because "[t]he tape will suffice itself, Your Honor." Although portions of the tape were played, the videotape was never formally offered into evidence.

Trooper Fountain's testimony during the hearing showed that she was "working radar" on I–45 in Montgomery County at

2:30 a.m. on June 3, 2003. She saw appellant speed onto the freeway and followed him to the next exit, where he turned off. She turned on her emergency lights, and appellant pulled over in a parking lot. Besides speeding, the trooper saw no other traffic violation or indications of "bad driving."

Trooper Fountain did not, at that time, think she had stopped an intoxicated person. But when she approached appellant and asked for his driver's license and insurance, "[h]e was extremely slow to respond." He fumbled through his wallet, passing by his license, and was slow to provide both his license and insurance. When she asked appellant to get out of his car, he was slower than normal in doing so, and "his speech was mumbled, real under his breath and mumbled." She wrote up a warning ticket for speeding and was ready to deliver it to him when she smelled alcohol on his breath. At that point, she had a suspicion that he might be intoxicated. In response to the prosecutor's questions, Trooper Fountain stated that, based on that information, "I felt I needed to investigate further by performing standardized field sobriety tests."

Q: And did you perform those tests?

A: Yes, ma'am, I did.

Q: What tests did you have him do?

A: Did the horizontal gaze nystagmus, the walk and turn, and the one-leg stand.

Q: And on the basis of all of those tests and how the defendant performed, what did you decide to do?

A: I placed him under arrest for driving while intoxicated.

2) The court of appeals erred in holding that the trial record was sufficient to establish probable cause to arrest when the evidence consisted only of the conclusory statement that appellant "failed field sobriety tests."

Because we agree with appellant on his first ground for review and remand this case to the court of appeals for further proceedings on that ground, we dismiss appellant's second ground for review.

The focus of appellant's questioning on direct examination and of the State's questioning on cross-examination was Trooper Fountain's continued detention of appellant after she wrote a warning ticket for speeding.

In his closing argument at the hearing, appellant mentioned, for the first time, the issue of probable cause to arrest. He stated that, assuming arguendo that there was articulable suspicion to detain appellant for further investigation, the State

> failed to show you other and conclusory terms that he failed field sobriety tests. They are undescribed field sobriety tests. How he did on those tests was not described to you. It wasn't my burden. It's their burden. All you heard was that he did-she did an HGN, a walk and turn test and a one-leg stand test. You never even heard he failed them. I know you didn't hear why he failed them.... I believe the El Paso Court of Appeals decided this exact case and they found that when field sobriety tests are referenced but they are not described and the State fails in their burden to show probable cause.

The trial judge took the matter under consideration and apparently denied appellant's motion at some later time. It is unclear exactly when the trial court ruled and what he ruled upon-the motion to suppress generally, the issue of articulable suspicion to detain, or both articulable suspicion to detain and probable cause to arrest.[4]

Some months later, appellant filed a motion to reconsider, and, in presenting that motion to the trial judge, noted that "the main issue focuses on was the trooper justified in continuing the investigation after she had issued a warning citation." He stated that the videotape showed that "there is no mumbled speech on the tape. There is no slow reaction. So no matter what the officer said she observed or heard, it just wasn't there." Thus, according to the defense, "Once the citation was given, the warning citation was given, she had no legal right to further detain him." The State then argued that the trooper

> said he was slow to respond, seemed to be fumbling for his license and I think that coupled with what she perceived that evening with slurred speech. Now, did we hear it on the video? I can't recall if we did or not, but the quality of the video is not as good as her ears right there that night when she said she perceived fumbling with the license, slurred speech. She said when she was handing them to him, she smelled alcohol. Those three things do justify her detention of him and are reasonable under the cir-

---

**4.** It is extremely difficult to determine from this record whether the trial judge was actually asked to resolve the question of probable cause and whether he made a ruling on that issue. Appellant stated in his Brief to the court of appeals that he "expects that there will be a supplemental Clerk's record filed that contains the trial court's order denying the motion to suppress." Such a supplemental record may have been prepared and filed, but it is not in our records. For the reasons set out in the text of this opinion, we cannot simply "assume" its existence and contents. But, on remand, the record may be supplemented.

One benefit of the decision in State v. Cullen, 195 S.W.3d 696, 698–99 (Tex.Crim.App. 2006), is that the losing party on a motion-to-suppress hearing in the trial court may require the trial court to make findings of fact and conclusions of law in support of its ruling. Of course the prevailing party may also request such findings, although the trial court is not required to make them at that party's behest. When such findings are made, appellate courts are not left wondering whether a particular issue was actually considered by the judge and ruled upon.

cumstances that existed that night, the totality of the circumstances.

Appellant responded that "there are only two items prior to her continuing the investigation. That would be mumbled speech, which the Court is not bound to accept because the Court heard the audio portion. I brought it if you wanted to re-listen to it, just the portion we're talking about, like a three-minute section. Slowness to react, I don't see it there either."

The trial court concluded: "I understand and I don't think it's strong, but I think there was enough there to justify it.... I think your arguments will be or will be well received by a jury when you look at all of it, but I still think there was enough to get her to that point."

Immediately thereafter, appellant pled guilty, and the trial court sentenced him to 180 days in jail probated for a year and a fine of $600.

Appellant raised two issues on appeal. He claimed that the trial court erred in denying his motion to suppress because (1) Trooper Fountain lacked articulable suspicion to detain him after she decided to give him a warning ticket, and (2) the State had failed to show that she had probable cause to arrest appellant for DWI. Appellant did not designate the videotape to be included in the appellate record. The State therefore requested that it be permitted to supplement the appellate record with a copy of Trooper Fountain's scene videotape which showed appellant performing the field sobriety tests. Appellant objected, arguing that the videotape had never been marked as an exhibit or formally introduced into evidence in the trial court. The court of appeals stated that because appellant "did not agree to the State's request, and because [it] could not determine whether [appellant's] attorney showed the entire videotape in court," it denied the State's request.[5]

On the issue of Trooper Fountain's articulable suspicion, the court of appeals held that the facts that Trooper Fountain had before her "justified further investigation" into appellant's sobriety.[6] Those facts included: (1) appellant's "difficulty in complying promptly to her ordinary requests for license and insurance information"; (2) "his unusually slow movement" getting out of his car; (3) his "mumbled speech"; and (4) the smell of alcohol on his breath before he signed the warning ticket.[7]

Concerning the issue of probable cause, the court of appeals noted that the State initially responded in its appellate brief by asserting that appellant "did not challenge the State's evidence of probable cause during the motion to suppress hearing."[8] The court of appeals rejected the State's contention that appellant forfeited his right to complain about the issue of probable cause on appeal because he had failed to litigate it in the trial court.[9] The State

---

5. *Amador,* 187 S.W.3d. at 546. The appellate record contains only the reporter's record of Officer Fountain's testimony. In several places that record refers to the playing of the videotape for the witness, parties and the trial judge. It is unknown how much of the videotape was actually viewed by the trial judge. But, as the court of appeals noted, at least some portion of the videotape showing the field sobriety tests—specifically the one-leg-stand—was played for the trial judge. *Id.*

6. *Id.* at 547.

7. *Id.* at 546–47. Appellant did not petition this Court for review of that decision.

8. *Id.* at 547–48.

9. *Id.* at 548. The court of appeals stated,

> The State cites no authority for the proposition that the Rules of Appellate Procedure require both a written motion and argument at an oral hearing to perfect error. In reviewing defense counsel's argument to the trial court during the hearing on [appellant's] motion to suppress, we also find [his]

also argued that the videotape provided sufficient evidence of probable cause to support appellant's arrest for DWI.[10] The court of appeals stated that "[b]ecause the videotape is not in the appellate record, a complete review of the trial court's ruling is impossible."[11] However, it also concluded that, because appellant had "introduced the videotape, suffered the adverse ruling on his motion to suppress, and presented an incomplete record on appeal," he had failed to ensure that " 'the record on appeal [was] sufficient to resolve the issue he present[ed].' "[12] Therefore, the court of appeals assumed that the videotape sup-

ported the trial court's implicit finding that Trooper Fountain had probable cause to arrest appellant for DWI.[13]

## II.

▮ The defendant in a criminal proceeding who alleges a Fourth Amendment violation bears the burden of producing some evidence that rebuts the presumption of proper police conduct.[14] "A defendant meets his initial burden of proof by establishing that a search or seizure occurred without a warrant."[15] The burden then shifts to the State to prove that the search or seizure was nonetheless reasonable un-

---

attorney stated, "The burden of proving probable cause lies with the Government." Thus, even if we accepted the State's argument, which we do not, the record does not support its position.

*Id.* At the trial-court hearing on appellant's motion for reconsideration, no one mentioned the term "probable cause to arrest." No one asked for a ruling on whether there was probable cause to arrest. The parties and the trial court were focused solely upon the question of articulable suspicion to detain appellant to conduct field-sobriety tests. Although appellant's written motion to suppress and his motion for reconsideration mentioned probable cause to arrest, that issue was never specifically brought to Trooper Fountain's attention, was barely mentioned by the defense during the initial hearing, and was not referenced at all by the parties at the motion for reconsideration. One might reasonably question whether a statement during closing argument fairly puts the opposing party and the trial judge on notice that a party is litigating the existence of probable cause. *See Martinez v. State,* 91 S.W.3d 331, 335–36 (Tex.Crim.App.2002) (noting that both TEX.R.APP. P. 33.1 and TEX.R. EVID. 103 are " 'judge-protecting' rules of error preservation," and the forfeiture of claims on appeal depends on "whether the complaining party on appeal brought to the trial court's attention the very complaint that party is now making on appeal"); *Heidelberg v. State,* 144 S.W.3d 535, 538–43 (Tex.Crim. App.2004) (collecting cases and noting that "one must look to the context of each case in order to see if the ground of the objection was

apparent" to the trial judge, and holding that an objection to evidence on federal constitutional grounds did not put trial judge on notice of a claim that the evidence was barred by Texas Constitution); *Sedani v. State,* 848 S.W.2d 314, 320 (Tex.App.-Houston [1st Dist.] 1993, pet. ref'd) ("When a party is allowed to hide the reasons for its requested relief until the appeal," the two purposes for requiring a party to make a specific objection and "state reasons for any ruling or judgment he desires" are defeated). However, the State did not petition for review on this issue, and therefore we will not address it.

10. 187 S.W.3d at 548.

11. *Id.* at 549.

12. *Id.*

13. *Id.* ("Because the trial court reviewed the videotape, a detailed description of [appellant's] performance during the stop is unnecessarily cumulative.").

14. *Russell v. State,* 717 S.W.2d 7, 9 (Tex.Crim. App.1986) ("When a defendant seeks to suppress evidence on the basis of a Fourth Amendment violation, this Court has placed the burden of proof initially upon the defendant ... [who] must produce evidence that defeats the presumption of proper police conduct and therefore shifts the burden of proof to the State.") (citations omitted).

15. *Id.*

der the totality of the circumstances.[16]

In reviewing a trial court's ruling on a motion to suppress evidence and its determination of the reasonableness of either a temporary investigative detention or an arrest, appellate courts use a bifurcated standard of review.[17] They must give "almost total deference to a trial court's determination of the historical facts that the record supports especially when the trial court's fact findings are based on an evaluation of credibility and demeanor."[18] This "deferential standard of review in *Guzman* also applies to a trial court's determination of historical facts when that determination is based on a videotape recording admitted into evidence at a suppression hearing."[19] Appellate courts also afford the same level of deference to a trial court's ruling on "application of law to fact questions," or "mixed questions of law and fact," if the resolution of those questions turns on an evaluation of credibility and demeanor.[20] The appellate courts review *de novo* "mixed questions of law and fact" that do not depend upon credibility and demeanor.[21]

When the trial court does not make explicit findings of fact in ruling on a motion to suppress evidence, appellate courts "review the evidence in a light most favorable to the trial court's ruling and assume that the trial court made implicit findings of fact supported by the record."[22] But reviewing courts can assess only the evidence that is actually in the appellate record.[23] If the appellate record is incomplete or anything relevant is omitted from it, any party may "direct the official court reporter to prepare, certify, and file in the appellate court a supplemental reporter's record containing the omitted items."[24]

Sometimes the parties may treat an exhibit, document, or other material as if those items had been admitted into evidence, even though they were never formally offered or admitted in the trial court. For example, in *Harden v. State*,[25] this Court noted that a photograph of a burned trailer shown to the jury in an arson trial was the only evidence that would support a finding that the trailer was a "house."[26] We noted,

> In [the] absence of a timely objection, the display of the photograph before the jury and the elicitation of testimony concerning its features was tantamount to the introduction of the photograph and it could be properly considered as part of

16. *Id.*

17. *Ford v. State*, 158 S.W.3d 488, 493 (Tex. Crim.App.2005).

18. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim.App.1997).

19. *Montanez v. State*, 195 S.W.3d 101, 109 (Tex.Crim.App.2006).

20. *Id.* at 107.

21. *Id.*

22. *Ford*, 158 S.W.3d at 493.

23. *See Rowell v. State*, 66 S.W.3d 279, 282 (Tex.Crim.App.2001) (rejecting State's argument that "any omission in the record the appellant presents is presumed to support the trial court's ruling"; concluding that Tex. R.App. P. 34.6 "permits and requires each party to see that the reporter's record contains all that the appellate court needs. It is no longer necessary, or sufficient, for a party to argue that the appeal should be decided by hypotheses about missing portions of the record.").

24. Tex.R.App. P. 34.6(d).

25. 417 S.W.2d 170 (Tex.Crim.App.1967).

26. *Id.* at 174 (op. on reh'g).

the evidence.[27]

Even though the photograph was never *"formally"* offered and introduced into evidence nor brought forward in the record[,]"[28] we requested that the photograph be forwarded to this Court. We then used that photograph, which had never been offered or admitted into evidence and had not been included in the original record on appeal, in assessing the sufficiency of the evidence to prove that the burned trailer was, in fact, a house.[29] Professor Dix notes that, after *Harden,*

> Texas courts have held that documents or items in some way made part of the trial record which are treated by the court and parties as if formally introduced into evidence are properly considered by the judge and jury on the merits of the case. Thus, they are properly included in the appellate record and considered by the appellate court.[30]

But if the court reporter's record is unclear and the parties cannot agree as to

27. *Id.*

28. *Id.*

29. *Id.*

30. 43A GEORGE E. DIX & ROBERT O. DAWSON, TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 43.349 at 606 (2d ed.2001); *see also Cornish v. State,* 848 S.W.2d 144, 145 (Tex. Crim.App.1993) (in review of *Batson* hearing, court would consider juror information cards that were used by both the prosecutor and defense during hearing as if they had been introduced into evidence and trial judge had stated "[t]he cards will speak for themselves"; "From this exchange it is apparent that the parties and the trial judge regarded the juror information cards as a significant part of the evidence upon which a resolution of appellant's *Batson* claim would depend."); *Heberling v. State,* 834 S.W.2d 350, 356 (Tex.Crim. App.1992) (collecting cases and holding that "in the absence of a timely objection, the display of a photograph before the jury coupled with testimony concerning the contents of the photograph is tantamount to introduction of the photograph into evidence"); *State*

whether and to what extent they, the trial court, or the jury saw or used an item that was not formally introduced into evidence, "the trial court must-after notice and a hearing-settle the dispute."[31]

With those general legal propositions in mind, we turn to the present case.

### III.

 Here, appellant argues that the court of appeals erred by "assuming" that (1) Trooper Fountain's videotape recorded appellant's performance of the field sobriety tests, (2) the trial judge viewed all of that portion of the videotape, and (3) the video depiction of those tests supported Trooper Fountain's opinion that appellant was intoxicated at the time she arrested him. Appellant is correct.

 Reviewing courts must defer not only to all implicit factual findings that the record will support in favor of a trial court's ruling,[32] "but also to the drawing of

*v. Brown,* 929 S.W.2d 588, 591 (Tex.App.- Corpus Christi 1996, no pet.) (concluding that when it is clear that both the parties and the trial judge treated an exhibit as evidence, the exhibit may be considered on appeal as if admitted); *Smith v. State,* 859 S.W.2d 463, 465 (Tex.App.-Fort Worth 1993, pet. ref'd).

31. TEX.R.APP. P. 34.6(e)(2); *see* DIX & DAWSON, § 43.472 at 696 (discussing abatement and remand for modification of reporter's record).

32. *Guzman v. State,* 955 S.W.2d 85, 89 (Tex. Crim.App.1997); *see also Manzi v. State,* 88 S.W.3d 240, 243 (Tex.Crim.App.2002) (holding that deference must be given to trial court's findings even when those findings do not turn upon the assessment of credibility and demeanor; stating, "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous. This is so even when the district court's findings do not rest on credibility determinations, but are based instead on physical or documentary evidence or inferences from other facts.") (quoting *Anderson v. City of Bessemer City,* 470 U.S. 564, 573–74, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985)).

reasonable inferences from the facts." [33] But reviewing courts cannot "assume" or speculate about the contents of exhibits or other materials that are not contained in the appellate record.[34]

In the present case,[35] the court of appeals relied upon *Guajardo v. State*,[36] for the proposition that it is "the appealing party's burden to ensure that the record on appeal is sufficient to resolve the issue he presents." [37] Appellant argues that *Guajardo* does not apply here because he did not have the burden of proof in the trial court to establish probable cause. He argues: "It was the State's burden to offer a sufficient record to the trial court to sustain its burden of proof. Its failure to do so cannot result in a presumption that the evidence it did not make part of the record in the trial court supported the trial court's decision." [38]

Indeed it was the State's burden to establish, in the trial court, the existence of

articulable suspicion to detain appellant once Trooper Fountain wrote him a warning ticket and to establish probable cause to arrest appellant if that issue was disputed. It was, however, appellant's burden to bring forward a record on appeal sufficient to show that the trial court erred in his ruling on the motion to suppress.[39] Appellant claims that he does not rely upon the existence or content of the videotape in his appeal.[40] From his viewpoint, the record on appeal is sufficient to resolve the issue he presents without the videotape. He does not need it, and he does not want it. Because he does not rely upon its contents, he was not required to designate that videotape for inclusion in the appellate record.[41]

Conversely, the State did want the videotape in the appellate record. It quite properly tried to supplement the record with the videotape.[42] Appellant, again

33. *Kelly v. State*, 163 S.W.3d 722, 726 (Tex. Crim.App.2005).

34. *See, e.g., Green v. State*, 912 S.W.2d 189, 192 (Tex.Crim.App.1995) ("This Court does not decide cases based on speculation about matters not shown in the record."); *Davis v. State*, 658 S.W.2d 572, 579 (Tex.Crim.App. 1983) (noting that "from the record of appeal, we are informed that the bookstore contained magazines and books, and that the projectors inside the booths probably had films different from the film entitled 'Little Yummy.' We are not, however, told what the content and character of the magazines, books, or other films portrayed, revealed, or depicted, and it is not our function to speculate upon what that might be."); *compare Moss v. State*, 13 S.W.3d 877, 885 (Tex.App.-Fort Worth 2000, pet. ref'd) ("We do not have to speculate about the contents of the transfer order, nor do we have to wonder whether the copy before us is an accurate copy. The parties stipulated, and the trial court found, that the copy of the transfer order contained in the first supplemental clerk's record is accurate and complete.").

35. *Amador*, 187 S.W.3d at 549.

36. 109 S.W.3d 456 (Tex.Crim.App.2003).

37. *Id.* at 462, n. 17. The court of appeals also cited *Ortiz v. State*, 144 S.W.3d 225, 230 (Tex.App.Houston [14th Dist.] 2004, pet. ref'd), for the proposition that the appealing party must *"develop* the record to show the nature and source of an error and, in same cases, its prejudice to him." (emphasis in original).

38. Appellant's Brief at 14.

39. *Guajardo*, 109 S.W.3d at 462 n. 17.

40. By contrast, in *Guajardo*, the defendant had the burden to bring forward a record on appeal that showed that the trial court erred in denying his claim of collateral estoppel. He could not show that the trial court erred without providing a copy of the testimony from the former trial upon which he relied in the trial court. *Id.* at 462.

41. *See Rowell*, 66 S.W.3d at 282.

42. Tex.R.App. P. 34.6(d).

quite properly, objected to its inclusion because he claimed that the trial judge did not view its entirety and thus the appellate court might consider portions of the videotape that were not actually viewed by the trial judge and not considered when he made his ruling.[43] The court of appeals properly denied the State's written request for supplementation because appellant objected to its inclusion and the parties could not agree on how much of the videotape was actually viewed and used in the trial court. But the court of appeals was mistaken to leave this disagreement unresolved.

The court of appeals was faced with a dilemma: the trial judge obviously viewed portions of the videotape and appellant relied upon some portions of the tape in the trial court, but appellant objected to supplementation of the record because the trial court may not have viewed the entire tape. It would be improper to ignore evidence that the trial judge did consider, but it would be equally improper to consider evidence that the trial judge did not consider.

The solution to this dilemma is set out in Rule 34.6(d) and (e) of the Texas Rules of Appellate Procedure.[44]

▇▇▇▇ As we stated in *Whitehead v. State*,[45] "the record may be supplemented under the appellate rules if something has been omitted, [but] the supplementation

---

**43.** Appellant also claims that he used the videotape solely to impeach Trooper Fountain's in-court testimony and not to establish any substantive fact. He argues that the court of appeals was incorrect in stating that appellant "introduced" the videotape. While appellant is technically correct that he did not formally "introduce" the videotape, the record shows that appellant "used" the videotape for substantive purposes and relied upon its contents in arguing that he did not stumble, was not slow in getting out of his car, and did not mumble. Appellant also expressly relied upon the contents of that videotape in arguing at the motion for reconsideration that Officer Fountain lacked articulable suspicion in detaining appellant after writing the warning ticket. He offered to replay a portion of that tape to refresh the trial judge's recollection. Under these circumstances, it cannot be denied that appellant relied upon the videotape in the trial court for proof of his physical condition. We agree with the court of appeals that those portions of the videotape that were played for the trial judge were treated as if they were formally introduced into evidence. *See Cornish*, 848 S.W.2d at 145; *Heberling*, 834 S.W.2d at 356; *Harden*, 417 S.W.2d at 174.

**44.** Those sections read as follows:

(d) *Supplementation.* If anything relevant is omitted from the reporter's record, the trial court, the appellate court, or any party may

by letter direct the official court reporter to prepare, certify, and file in the appellate court a supplemental reporter's record containing the omitted items. Any supplemental reporter's record is part of the appellate record.

(e) *Inaccuracies in the reporter's record.*

(1) *Correction of inaccuracies by agreement.* The parties may agree to correct an inaccuracy in the reporter's record, including an exhibit, without the court reporter's recertification.

(2) *Correction of inaccuracies by trial court.* If the parties cannot agree on whether or how to correct the reporter's record so that the text accurately discloses what occurred in the trial court and the exhibits are accurate, the trial court must—after notice and hearing—settle the dispute. If the court finds any inaccuracy, it must order the court reporter to conform the reporter's record (including text and any exhibits) to what occurred in the trial court, and to file certified corrections in the appellate court.

(3) *Correction after filing in appellate court.* If the dispute arises after the reporter's record has been filed in the appellate court, that court may submit the dispute to the trial court for resolution. The trial court must then proceed as under subparagraph (e)(2).

TEX.R.APP. P. 34.6(d) & (e).

**45.** 130 S.W.3d 866 (Tex.Crim.App.2004).

rules cannot be used to create new evidence."[46] Of course, an appellate court's review of the record is generally limited to the evidence that was before the trial court at the time of the trial court's ruling.[47] And that is precisely the purpose of Rule 34.6. It ensures that the record on appeal accurately reflects all of the evidence that was seen by, used by, or considered by the trial judge at the time he made a ruling.[48] If the record as originally designated by the parties does not fully reflect the evidence considered by the factfinder, then the trial judge, the court of appeals, or any of the parties may direct the court reporter to supplement the appellate record with the missing items.[49] If the parties have a dispute over what items are missing from the appellate record, or they dispute the accuracy or completeness of those items, the trial court will resolve that dispute.[50]

In the present case, the State requested supplementation of the record. Thus, when a dispute arose over what and precisely how much the record should be supplemented, the court of appeals was mistaken to deny that request without also ordering the trial court to resolve the dispute. It was further mistaken in "assuming" that the portions of the videotape that the trial court viewed and used in ruling on appellant's motion to suppress were necessarily unfavorable to his position.

Because the court of appeals based its decision, at least in part, upon the contents of an exhibit that was not in the appellate record, it erred. Therefore, we sustain appellant's first ground for review. But because the State had properly requested supplementation of the record with that missing exhibit, we vacate the judgment of the court of appeals and remand this case

**46.** *Id.* at 872; *see also Routier v. State*, 112 S.W.3d 554, 557 (Tex.Crim.App.2003) (stating, in capital murder appeal, that this Court had ordered the court reporter "to prepare, certify, and file a supplemental reporter's record containing any omitted items. We also ordered the trial court to resolve any dispute raised in the appellant's motion and to ensure that the reporter's record conformed to what occurred at trial."). In *Routier*, this Court cited and relied upon *State Farm Fire & Cas. Ins. Co. v. Vandiver*, 941 S.W.2d 343 (Tex. App.-Waco 1997, no pet.), a case in which the court reporter failed to take notes of portions of depositions that were read into the record. We noted with approval that in *Vandiver*, the court of appeals held that the reporter's tapes could be used to establish the pages and lines of the depositions and that the record could be supplemented with those parts of the depositions that were actually read to the jury even though the depositions were not themselves offered into evidence. *Routier*, 112 S.W.3d at 565.

**47.** *Whitehead*, 130 S.W.3d at 872.

**48.** The Texas Supreme Court has stated that "appellate courts must construe [the rules governing correction of the appellate record] liberally so their decisions 'turn on substance rather than procedural technicality.'" *Galla-*

*gher v. Fire Ins. Exchange*, 950 S.W.2d 370, 371 (Tex.1997) (per curiam) (quoting *Crown Life Ins. Co. v. Estate of Gonzalez*, 820 S.W.2d 121, 121 (Tex.1991) (per curiam)); *see also Blondett v. State*, 921 S.W.2d 469, 477 (Tex. App.-Houston [14th Dist.] 1996, pet. ref'd) ("The purpose of [predecessor to Rule 34.6(e)] is to create an accurate record on appeal.").

**49.** Tex.R.App. P. 34.6(d).

**50.** Tex.R.App. P. 34.6(e)(3); *see also Rowell*, 66 S.W.3d at 282 & nn. 13 & 14; *Killough v. State*, —— S.W.3d ——, —— No. 10–06–00112–CR, 2007 Tex.App. LEXIS 179, *1, 2007 WL 64751, at *1 (Tex.App.-Waco 2007, n.p.h.) (abating appeal for trial court to resolve dispute over the accuracy or completeness of record of "a transcription of portions of a witness's statement recorded on a DVD which was played to the jury for impeachment purposes but not introduced into evidence."); *Jaynes v. State*, 216 S.W.3d 839, 843 (Tex.App.-Corpus Christi 2006, n.p.h.) (discussing trial court hearing when case abated under Rule 34.6(e) for resolution of dispute as to completeness and accuracy of trial record).

to that court for further proceedings consistent with this opinion.

HERVEY, J., filed a dissenting opinion, in which KELLER, P.J., and KEASLER, J., joined.

MEYERS, J., not participating.

HERVEY, J., dissenting in which KELLER, P.J., and KEASLER, J., join.

I respectfully dissent. I would decide that appellant had the burden under Rule 34.6(d) of the Texas Rules of Appellate Procedure to attempt to supplement the appellate record with the portions of the videotape that the trial court considered in denying appellant's motion to suppress.[1] Having failed to sustain this burden and having also taken affirmative steps to prevent the other party from taking on this burden, appellant should not now be heard to complain that the court of appeals assumed that the videotape supported the trial court's ruling on an issue that appellant apparently did not even preserve for appeal.

Appellant raised the issue of probable cause for his arrest on direct appeal in the court of appeals. *See Amador v. State,* 187 S.W.3d 543, 546 (Tex.Cr.App.2006).[2] The record reflects that, in denying appellant's motion to suppress and his motion for reconsideration, the trial court relied in part on portions of Fountain's patrol-car videotape apparently showing, among other things, appellant performing field sobriety tests. Appellant did not produce an appellate record with the portions of the videotape that the trial court considered in making its ruling,[3] and he took affirmative steps to frustrate the State's efforts in making the videotape a part of the appellate record. As I understand the Court's opinion, appellant opposed the State's efforts to supplement the appellate record with the videotape because it had never been formally introduced into evidence, not because the trial court may have considered only portions of it.[4]

1. Rule 34.6(d) allows for supplementation of the reporter's record if it omits anything relevant that an appellant designates to be included in the reporter's record under Rule 34.6(b)(1). In this case, appellant did not designate any portions of the videotape to be included in the reporter's record, so he arguably could not have supplemented it with these portions of the videotape under Rule 34.6(d).

2. The record, however, reflects that appellant did not raise this issue at the suppression hearing until the closing arguments. *See Amador,* op. at 670. The suppression hearing had focused on the validity of Fountain's "continued detention of appellant after she wrote a warning ticket for speeding." *See id.* Appellant's motion for reconsideration also focused on this discrete issue. *See Amador,* op. at 670. On this record, I would decide that appellant forfeited any issue of probable cause for his arrest, because the other party and the trial court could reasonably have believed that appellant was not contesting that issue. The Court's opinion declines to address this preservation of error issue, even

though the State raised it in the court of appeals and this Court has held that "preservation of error is a systemic requirement." *See Amador,* op. at 671 (noting that the State claimed in the court of appeals "that appellant forfeited his right to complain about the issue of probable cause on appeal because he had failed to litigate it in the trial court"), and op. at 671–72 n. 9 (suggesting that appellant failed to preserve issue of probable cause for his arrest, but declining to address that issue); *Haley v. State,* 173 S.W.3d 510, 515 (Tex.Cr. App.2005) ("preservation of error is a systemic requirement").

3. This was appellant's burden under Rule 34.6(b)(1), which provides:

At or before the time for perfecting the appeal, the appellant must request in writing that the official reporter prepare the reporter's record. The request must designate the exhibits to be included. A request to the court reporter—but not the court recorder—must also designate the portions of the proceedings to be included.

Under these circumstances, the court of appeals assumed that the videotape supported any ruling by the trial court that probable cause existed for appellant's arrest. *See Amador,* op. at 671–72. This Court decides that the court of appeals erred to assume that the videotape supported any such ruling by the trial court and suggests that the court of appeals could on remand abate the appeal for supplementation of the record with portions of the videotape under the procedures set out in Rule 34.6(e). *See Amador,* op. at 668, 672, 677–78.

It is a well-settled rule that there is a presumption of regularity in the trial court proceedings, absent a showing to the contrary by the appealing party. *See Light v. State,* 15 S.W.3d 104, 107 (Tex.Cr.App. 2000) (presumption of regularity is a judicial construct that requires a reviewing court, absent evidence of impropriety, to indulge every presumption in favor of the regularity of the proceedings and documents in the lower court); *Ex parte Wilson,* 716 S.W.2d 953, 956 (Tex.Cr.App. 1986) (there is a presumption of the regularity of the judgment of conviction and the proceedings, absent a showing to the contrary).[5] This requires the appealing party to present a record showing reversible error. *See Word v. State,* 206 S.W.3d 646, 651–52 (Tex.Cr.App.2006) (appealing party has burden to present a record showing reversible error). The appealing party does not fulfill this burden by omit-

ting relevant portions of the trial court proceedings from the appellate record.

By failing to make the relevant portions of the videotape a part of the appellate record, appellant could not sustain his burden in the court of appeals to overcome the presumption that the videotape supported the trial court's ruling denying appellant's motion to suppress. The court of appeals, therefore, properly presumed that the videotape supported this ruling. *Cf. Ex parte Guzman,* 589 S.W.2d 461, 464 (Tex.Cr. App.1979) (since no statement of facts of juvenile's examining trial were filed, reviewing court could presume that all procedural steps within the proceeding were complied with).

This Court's decision in *Rowell v. State*[6] is not to the contrary. This Court in *Rowell* decided that the current rules of appellate procedure permit the appealing party to present a partial record and that these rules "allow the parties to determine what is necessary for a record to be so complete as to enable the appellate court to decide the point of error." *See Rowell,* 66 S.W.3d at 282. But, the partial record presented by the appealing party in *Rowell* showed reversible error, and it was complete enough so as to enable the appellate court to decide the substantive point of error presented on appeal. *See Rowell,* 66 S.W.3d at 280–82; *see also Word,* 206 S.W.3d at 651–52 (appealing party has burden to present a record showing reversible error). The record presented by the ap-

---

**4.** *See* Maj. Op. at 671 (stating that appellant objected to State's request to supplement record with videotape because it "had never been marked as an exhibit or formally introduced into evidence in the trial court"); *but see* Maj. Op. at 675–76 (stating that appellant objected to State's request to supplement record with the videotape because "the trial judge did not view its entirety and thus the appellate court might consider portions of the

videotape that were not actually viewed by the trial judge and not considered when he made his ruling").

**5.** *See also Vega v. State,* 707 S.W.2d 557, 559 (Tex.Cr.App.1986); *Stacy v. State,* 819 S.W.2d 860, 863 (Tex.Cr.App.1991) (Baird, J., dissenting) ("presumption of regularity is a sound judicial construct").

**6.** 66 S.W.3d 279, 282 (Tex.Cr.App.2001).

pealing party in *Rowell* did not omit anything relevant to this substantive point of error. *See Rowell,* 66 S.W.3d at 280–81.[7] Under *Rowell,* 66 S.W.3d at 282, the appealing party is required to present a record "so complete as to enable the appellate court to decide the point of error." Appellant failed to do this when he made no attempt to make the relevant portions of the videotape a part of the appellate record.

Even if the State (rather than appellant) had a burden to make the videotape a part of the appellate record, the court of appeals could still have presumed that the videotape supported any ruling that probable cause existed for appellant's arrest. When, as here, a party affirmatively keeps the other party from supplementing the appellate record "to be so complete as to enable the appellate court to decide the point of error," [8] that party should be estopped from complaining that the appellate court presumed that this missing part of the record supports the trial court's ruling. *See Prystash v. State,* 3 S.W.3d 522, 530–32 (Tex.Cr.App.1999) (a party is generally estopped from complaining about an action that he induced).

Finally, the Court's opinion suggests that the court of appeals could on remand abate the appeal for supplementation of the record with portions of the videotape under the procedures set out in Rule 34.6(e). *See Amador,* 187 S.W.3d at 550. But, Rule 34.6(e) sets out procedures for correcting inaccuracies in the reporter's record. There was nothing inaccurate in the reporter's record that appellant designated under Rule 34.6(b)(1) to be filed in the court of appeals. This record was

merely incomplete and did not "enable the appellate court to decide the point of error." *See Rowell,* 66 S.W.3d at 282. Rule 34.6(e) should not be applied to provide appellant with another opportunity to do what he should have done well before now and what he affirmatively prevented the other party from doing. *See* GEORGE E. DIX & ROBERT O. DAWSON, TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 43.474 at 699 (2d ed. 2001) ("Appellate courts' power to abate is not general authority in the appellate judiciary to give appellants a second chance to do what they failed to do when the case was before the trial court").

I respectfully dissent.

omit the search warrant affidavit from the appellate record, and then claim that he should win on appeal. *See id.*

---

7. The appealing party in *Rowell* claimed that an affidavit in support of a search warrant was invalid. *See Rowell,* 66 S.W.3d at 280–81. The appealing party made the search warrant affidavit a part of the appellate record. *See id.* The appealing party did not

8. *See Rowell,* 66 S.W.3d at 282.