02-11-383-CR










 

 

 

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

 

NO. 02-11-00383-CR

 

 


 
 
 Jessie T. Mack
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

FROM Criminal
District Court No. 2 OF Tarrant COUNTY

----------

MEMORANDUM
OPINION[1]

----------

          A
jury convicted Appellant Jessie T. Mack of robbery causing bodily injury, and the
trial court sentenced him to fifty years’ confinement.[2] 
In a single point, Mack argues that the trial court erred by denying his motion
to suppress his oral statement.  We will affirm.

          Stephen
Salley arrived at the Lake Como Church of Christ Community of Hope retirement
center on January 27, 2011, at around 9:00 p.m. to deliver prescriptions. 
When Salley paused at the door to recall the entry code, Mack confronted Salley
and asked him to turn over his wallet.  Salley declined, and Mack told him,
“Give me your wallet or I’m going to shoot you.”  The two then began to
struggle, and Mack managed to grab Salley’s wallet.  When Mack discovered that
there was no money in Salley’s wallet, Salley, who was afraid of suffering
imminent bodily injury, gave Mack $20 from his pocket, and Mack fled the
scene.  Authorities investigating the offense obtained video surveillance from
Lake Como’s security cameras and arrested Mack approximately two weeks later. 
Detective Jerry Cedillo interviewed Mack and recorded his oral statement.  During
the interview, Mack initially denied any involvement in the robbery but later
admitted that he took Salley’s money.[3]  The trial court denied
Mack’s motion to suppress the oral statement.

          In
his only point, Mack argues that the trial court erred by denying his motion to
suppress the oral statement.  Mack contends that the statement was involuntary
and taken in violation of his due process rights under the Fourteenth Amendment
and his statutory rights under code of criminal procedure article 38.22 because
(1) Detective Cedillo threatened “to bring in” Mack’s girlfriend if he did
not cooperate, (2) Mack “lacked the ability to read and write,”[4]
and (3) Mack’s “insight and overall cognitive abilities are below
average.”[5]

          We
review a trial court’s ruling on a motion to suppress evidence under a
bifurcated standard of review.  Amador v. State, 221 S.W.3d 666, 673
(Tex. Crim. App. 2007); Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim.
App. 1997).  We give almost total deference to a trial court’s rulings on
questions of historical fact and application-of-law-to-fact questions that turn
on an evaluation of credibility and demeanor, but we review de novo application-of-law-to-fact
questions that do not turn on credibility and demeanor.  Amador, 221
S.W.3d at 673; Estrada v. State, 154 S.W.3d 604, 607 (Tex. Crim. App.
2005); Johnson v. State, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002).

          The
determination of whether a confession is voluntary is based on an examination
of the totality of the circumstances surrounding its acquisition.  Penry v.
State, 903 S.W.2d 715, 744 (Tex. Crim. App.), cert. denied, 516 U.S.
977 (1995); Smith v. State, 779 S.W.2d 417, 427 (Tex. Crim. App. 1989). 
A statement is involuntary for purposes of federal due process if the record
reflects “official, coercive conduct of such a nature that any statement
obtained thereby was unlikely to have been the product of an essentially free
and unconstrained choice by its maker.”  Alvarado v. State, 912 S.W.2d
199, 211 (Tex. Crim. App. 1995); see Oursbourn v. State, 259 S.W.3d 159,
169–70 (Tex. Crim. App. 2008).  “Absent [coercive] police conduct causally
related to the confession, there is simply no basis for concluding that any
state actor has deprived a criminal defendant of due process of law.”  Alvarado,
912 S.W.2d at 211 (citing Colorado v. Connelly, 479 U.S. 157, 164, 107
S. Ct. 515, 520 (1986)).

          Although
a claim of involuntariness under code of criminal procedure article 38.22 can
be predicated on police overreaching, section 6 of the article additionally
encompasses subjective involuntariness claims that do not turn solely on police
overreaching.  Oursbourn, 259 S.W.3d at 172.  For example, “[a]
confession given under the duress of hallucinations, illness, medications, or
even a private threat . . . could be involuntary under
Article 38.21 and the Texas confession statute.”  Id.  Thus, under a section
6 voluntariness inquiry, we may consider factors such as the suspect’s youth, intoxication,
mental retardation, or other disability that would not otherwise raise a
federal due process claim.  Id. at 172–73.  Regarding mental impairment,
“[m]ental deficiency is a factor, but not alone determinative, in ascertaining
the voluntariness of a confession.”  Penry, 903 S.W.2d at 744.  The
question is whether the accused’s impairment is so severe that he was incapable
of understanding the meaning and effect of his statement.  Casias v. State,
452 S.W.2d 483, 488 (Tex. Crim. App. 1970).

          We
have reviewed Mack’s recorded oral interview in its entirety.  Regarding Mack’s
argument that Detective Cedillo threatened to arrest Mack’s girlfriend, during
the interview, Detective Cedillo (a) asked Mack if his girlfriend had
anything to do with the robbery, (b) told Mack that he needed to speak
with his girlfriend, and (c) said that Mack’s girlfriend will be “dealing”
with the police if she was somehow involved in the robbery.  The circumstances
surrounding Detective Cedillo’s questions and statements about Mack’s
girlfriend concerned Detective Cedillo’s interest in gathering facts about the
offense as part of his overall investigation.  While a threat to arrest a
family member can result in an involuntary confession, see Contreras v. State,
312 S.W.3d 566, 576–77 (Tex. Crim. App., cert. denied, 131 S. Ct.
427 (2010), at no point during Mack’s interview did Detective Cedillo threaten
to arrest Mack’s girlfriend if he did not confess to committing the robbery. 
Indeed, Detective Cedillo testified at the hearing on the motion to suppress
that at no time during the interview did he coerce or threaten Mack to convince
him to give a statement.

          As
for Mack’s argument that his statement was involuntary because of his inability
to read and his reduced cognitive abilities, the recorded interview
demonstrates that Mack engaged in a composed, rational conversation with
Detective Cedillo for over twenty minutes—Mack understood and responded to
Detective Cedillo’s questions, he was coherent throughout the entire interview,
he implicated himself in the robbery only after Detective Cedillo showed him
photographs taken from Lake Como’s surveillance footage depicting him engaged
in a struggle with Salley, and he told Detective Cedillo that he was sorry for
what he had done.  Nothing that occurred during the interview indicates that
Mack lacked the mental capacity to knowingly and voluntarily give his statement
or to otherwise understand and waive his rights.  At the hearing on the motion
to suppress, Detective Cedillo testified that based on his observations, Mack’s
“ability to understand and observe what was going on and to make judgments” was
not below average or impaired.

          Considering
the totality of the circumstances, we cannot conclude that Mack’s oral
statement was involuntary under either federal due process or article 38.22
standards.  Accordingly, we hold that the trial court did not err by denying
Mack’s motion to suppress.  We overrule Mack’s sole point and affirm the trial
court’s judgment.

 

 

BILL MEIER
JUSTICE

 

PANEL: 
GARDNER,
WALKER, and MEIER, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  August 9, 2012









[1]See Tex. R. App. P. 47.4.





[2]Mack pleaded true to the
habitual offender notice that alleged two prior felony convictions.





[3]Mack did not agree that he
threatened to shoot Salley.





[4]Mack told Detective
Cedillo at the conclusion of the questioning about the robbery that he could
not read.





[5]At the hearing on the
motion to suppress, Mack asked the trial court to take judicial notice of a
report by “Dr. Norman” opining that Mack’s “ability to comprehend and make
decisions is below average.”