

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-13-00552-CR

LISA D. WALL                                                    APPELLANT

V.

THE STATE OF TEXAS                                                  STATE

----------

FROM COUNTY CRIMINAL COURT NO. 4 OF DENTON COUNTY
TRIAL COURT NO. CR-2012-01008-D

----------

## MEMORANDUM OPINION[1]

----------

## I. INTRODUCTION[2]

---

[1]*See* Tex. R. App. P. 47.4.

[2]This case was originally submitted without oral argument on Friday, May 30, 2014, before a panel consisting of Chief Justice Livingston, Justice Gardner, and Justice Gabriel. The court, on its own motion on January 15, 2015, ordered this case reset without oral argument on February 5, 2015; assigned this case to a new panel, consisting of Chief Justice Livingston, Justice Walker, and Justice Gabriel; and assigned the undersigned to author the opinion.

Appellant Lisa D. Wall appeals her conviction for driving while intoxicated. After the trial court denied her motion to suppress evidence, Wall pleaded no contest. The trial court assessed her punishment at 300 days' confinement, which the court suspended; the trial court placed Wall on community supervision for fifteen months. Wall perfected this appeal.

In her sole issue, Wall argues that the trial court erred by denying her motion to suppress. The State raises a cross-point, asserting that although the trial court correctly denied Wall's motion to suppress, the denial was proper on an alternative ground rejected by the trial court—that the stop of Wall's vehicle was justified based on the arresting officer's reasonable suspicion that Wall was driving while intoxicated. Because we sustain Wall's issue but also sustain the State's cross-point, we will affirm the trial court's judgment.

## II. FACTUAL AND PROCEDURAL BACKGROUND[3]

Officer Corey Padgett, driving his patrol unit, approached an intersection where he observed Wall stopped at a flashing yellow light. Wall remained stopped for several seconds, and cross-traffic, which had a flashing red light, drove warily through the intersection when Wall did not. After a few seconds, Wall drove through the intersection, and Officer Padgett followed her.

As Wall approached another intersection with a flashing yellow light, she braked hard but late, coming to an almost complete stop in the middle of the

---

[3]As set forth below, the events leading up to the stop were recorded by Officer Padget's dash cam video recorder; we have reviewed the video.

2

intersection. Before her vehicle completely stopped, Wall accelerated through the intersection, changed lanes, and made a U-turn. Based on Wall's curious driving behavior, Officer Padgett initiated a traffic stop.

When Officer Padgett began talking with Wall, he observed that her eyes were glassy and red, her speech was slurred, and that she had a slight smell of alcohol. Officer Padgett administered standard field sobriety tests, and Wall displayed six clues of intoxication on the horizontal gaze nystagmus test. Officer Padgett arrested Wall for driving while intoxicated, and a subsequent blood draw revealed that Wall had a blood alcohol concentration of .16.

Wall filed a motion to suppress evidence seized as a result of Officer Padgett's traffic stop, arguing that Officer Padgett lacked reasonable suspicion to stop her vehicle. At the suppression hearing, Officer Padgett testified that Wall's reaction to the two lights had made him suspect that she was intoxicated. He explained that stopping at a flashing yellow light is not normal, even if it is not a traffic violation to do so. From his training, Officer Padgett knew that intoxicated drivers often fail to follow traffic signals, and he considered a driver's inability to respond properly to a flashing yellow light to be a big indicator of intoxication. In fact, Officer Padgett had made prior DWI stops at a flashing yellow light "at that exact area" of the road that Wall was travelling. Given Wall's driving behavior and the fact that it was around 2:00 a.m. on a weekend day in a neighborhood with many bars, Officer Padgett suspected that Wall was intoxicated.

3

The trial court admitted and reviewed a video recording of the traffic stop. After the hearing, the trial court denied Wall's suppression motion. In its findings of fact and conclusions of law, the trial court determined that Wall's driving did not give rise to reasonable suspicion that she was driving while intoxicated. But the trial court concluded that Officer Padgett could have stopped Wall for either of the two traffic violations that Officer Padgett had observed: Wall's disregard of a traffic control device and Wall's U-turn, which the trial court considered too wide because Wall allegedly straddled the turning lane's white line in the turn.

## III. STANDARDS OF REVIEW

### A. MOTION TO SUPPRESS

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000), *modified on other grounds by State v. Cullen*, 195 S.W.3d 696 (Tex. Crim. App. 2006).

4

Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Montanez v. State*, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002). Concerning questions of historical fact, even when a video tape of the stop exists, the trial court's factual determinations are entitled to almost total deference so long as they are supported by the record. *See Tucker v. State*, 369 S.W.3d 179, 185 (Tex. Crim. App. 2012); *Montanez v. State*, 195 S.W.3d 101, 109 (Tex. Crim. App. 2006). Concerning application-of-law-to-fact questions that do not turn on the credibility and demeanor of the witnesses, we review the trial court's rulings on those questions de novo. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson*, 68 S.W.3d at 652–53.

Stated another way, when reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *Tucker*, 369 S.W.3d at 185; *Wiede*, 214 S.W.3d at 24; *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those fact findings. *Kelly*, 204 S.W.3d at 818–19. We then review the trial court's legal ruling de novo

5

unless its explicit fact findings that are supported by the record are also dispositive of the legal ruling. *Id.* at 818. We must uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case even if the trial court gave the wrong reason for its ruling. *State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007); *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), *cert. denied*, 541 U.S. 974 (2004).

## B. STATUTORY CONSTRUCTION

Statutory construction is a question of law that we review de novo. *Yazdchi v. State*, 428 S.W.3d 831, 837 (Tex. Crim. App. 2014). In construing a statute, we seek to effectuate the collective intent or purpose of the legislators who enacted the legislation. *Id.* We look first to the statute's literal text, and we read words and phrases in context and construe them according to the rules of grammar and common usage unless they have acquired technical or particular meaning. *Id.* When statutory language is clear and unambiguous, we give effect to its plain meaning unless to do so would lead to absurd consequences that the legislature could not have possibly intended. *Id.* at 837–38.

## IV. THE TRIAL COURT'S FINDINGS AND CONCLUSIONS

The trial court's findings of fact and conclusions of law included the following:

> The Court finds the driving of the defendant is not reasonable suspicion of driving while intoxicated. Caution in entering an intersection is proper. The Defendant sat at the intersection for 26 seconds that the [sic] Officer Padgett could observe and that is not obstructing a highway.

6

But the court finds the defendant could be stopped for disregarding the traffic control device and making a wide turn over the white line.

. . . .

The Court therefore denies the motion to suppress.

## V. LAW ON WARRANTLESS DETENTIONS

The Fourth Amendment protects against unreasonable searches and seizures by government officials. U.S. Const. amend. IV; *Wiede*, 214 S.W.3d at 24. To suppress evidence because of an alleged Fourth Amendment violation, the defendant bears the initial burden of producing evidence that rebuts the presumption of proper police conduct. *Amador*, 221 S.W.3d at 672; *see Young v. State*, 283 S.W.3d 854, 872 (Tex. Crim. App.), *cert. denied*, 558 U.S. 1093 (2009). A defendant satisfies this burden by establishing that a search or seizure occurred without a warrant. *Amador*, 221 S.W.3d at 672. Once the defendant has made this showing, the burden of proof shifts to the State, which is then required to establish that the search or seizure was conducted pursuant to a warrant or was reasonable. *Id.* at 672–73; *Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005); *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005).

To justify a brief detention for investigative purposes, the officer must be able to articulate something more than an "inchoate and unparticularized suspicion or 'hunch.'" *Foster v. State,* 326 S.W.3d 609, 613–14 (Tex. Crim. App.

7

2010) (citing *Terry v. Ohio, 3*92 U.S. 1, 27, 88 S. Ct. 1868, 1883 (1968)). Specifically, the officer must have some minimal level of objective justification for making the stop; when the officer can "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion" on the freedom of the person being detained, an investigative detention is reasonable. *Id.* (citing *Terry,* 392 U.S. at 21); *see Derichsweiler v. State,* 348 S.W.3d 906, 914 (Tex. Crim. App. 2011); *Brother v. State,* 166 S.W.3d 255, 257 (Tex. Crim. App. 2005). A brief intrusion is warranted, for instance, where the officer reasonably suspects that the person detained actually is, has been, or soon will be engaged in criminal activity. *Derischweiler,* 348 S.W.3d at 914; *Brother*, 166 S.W.3d at 257. The reasonableness of a given detention turns on the totality of the circumstances, which considers the public and private interests that are at stake. *Brother*, 166 S.W.3d at 259 n.6.

An officer has probable cause to stop and arrest a driver if he observes the driver commit a traffic offense. *State v. Gray*, 158 S.W.3d 465, 469–70 (Tex. Crim. App. 2005); *see State v. Ballman*, 157 S.W.3d 65, 70 (Tex. App.—Fort Worth 2004, pet. ref'd). Relevant here, the transportation code provides: "The operator of a vehicle facing a flashing yellow signal may proceed through an intersection or past the signal only with caution." Tex. Transp. Code Ann. § 544.008(b) (West 2011). Texas law governing U-turns on a divided highway and not at an intersection, as in this case, requires that the turn be made at a location

8

where the dividing physical barrier allows and be made safely and not at the crest of a hill or in the middle of a curve. *See* Tex. Transp. Code Ann. §§ 545.063(b)(1), 545.102, 545.103 (West 2011). Regarding lane compliance, a violation for failure to maintain a single lane requires that a driver's deviation from a lane be made in an unsafe manner. *See* Tex. Transp. Code Ann. § 545.060(a) (West 2011); *Fowler v. State*, 266 S.W.3d 498, 503–04 (Tex. App.—Fort Worth 2008, pet. ref'd) (following cases that interpret the statute as proscribing, not just a movement, but an unsafe movement).

## V. REASONABLE SUSPICION OF DRIVING WHILE INTOXICATED

As detailed below, the evidence—viewed in the light most favorable to the trial court's finding that the evidence supported a traffic-offense stop of Wall for disregarding a traffic control device or for making an overly wide U-turn and viewed in the light most favorable to its finding that the evidence did not support a reasonable suspicion that Wall was driving while intoxicated—does not support these findings. *See Kelly*, 204 S.W.3d at 820–21 (holding evidence viewed in light most favorable to trial court's ruling did not support it). In fact, the video from Officer Padgett's dash cam indisputably negates the trial court's findings that Wall committed the traffic offenses of disregarding a traffic control device and making an overly wide turn over the white line. *See Tucker*, 369 S.W.3d at 185 ("If the video evidence does not support the trial court's conclusion, then the court of appeals should reverse."); *State v. Houghton*, 384 S.W.3d 441, 446 (Tex. App.—Fort Worth 2012, no pet.) ("We thus give almost total deference to the trial

9

court's factual determinations unless the video recording indisputably contradicts the trial court's findings.").

Looking first to whether Wall's reaction to the flashing yellow light constituted a traffic violation, the transportation code simply states that a driver facing a flashing yellow light "may" proceed with caution. *See* Tex. Transp. Code Ann. § 544.008(b). Nothing in the provision proscribes stopping or excessively decelerating at a flashing yellow light. *See id.* Generally, the term "may" indicates an element of discretion rather than compulsion, which is better communicated with words like "shall." *See, e.g.*, *Ford v. State*, 305 S.W.3d 530, 539 (Tex. Crim. App. 2009) (discussing difference between "may" and "must" or "shall"). For example, in the preceding subsection of the same statute, the transportation code states that a driver facing a flashing red signal "shall" stop. *See* Tex. Transp. Code Ann. § 544.008(a) (West 2011); *see also Yazdchi*, 428 S.W.3d at 837 (holding that words are interpreted in context); *Ford*, 305 S.W.3d at 539 (discussing consistent use of the term "may" throughout the article relevant there). Giving the may-proceed-with-caution language of section 544.008(b) its plain meaning, Wall's overreaction to the flashing yellow light, although unusual, did not violate that section. *See* Tex. Transp. Code Ann. § 544.008(b). The evidence, viewed in the light most favorable to the trial court's finding that Wall disregarded a traffic-device, does not support this finding. *See Yazdchi*, 428 S.W.3d at 837 (holding that statutes are reviewed de novo); *Amador*, 221 S.W.3d at 673 (de novo review of application-of-law-to-fact

10

questions); *Estrada*, 154 S.W.3d at 607 (same); *Johnson*, 68 S.W.3d at 652–53 (same).

Looking next to whether Wall's U-turn constituted a traffic offense, the video does not support the trial court's finding that it did. Although Wall traversed the turning lane's white line while entering the turning lane, she did not re-cross it prior to or during her U-turn. Wall made the U-turn at a proper opening in the barrier and not at the crest of a hill or near a curve. *See* Tex. Transp. Code Ann. §§ 545.063(b)(1); 545.102. No cars were near, and there is no evidence the turn was done in an unsafe manner. *See* Tex. Transp. Code Ann. § 545.103. Thus, even assuming Wall re-crossed the right line or prolonged her transition across it, there is no evidence that the movement was unsafe, and thus it was not a violation. *See* Tex. Transp. Code Ann. §§ 545.060(a); *Fowler*, 266 S.W.3d at 503–04; *see also* Tex. Transp. Code Ann. §545.103 (requiring all turns and movements be done safely). Other than the video, there was no evidence of Wall's U-turn, and Officer Padgett did not mention, either in his affidavit or in his testimony, that Wall's U-turn was improperly performed. Thus, again, giving these transportation code sections their plain meaning, no evidence exists in the record that Wall violated them. The evidence, viewed in the light most favorable to the trial court's finding, does not support the trial court's finding that Wall's U-turn constituted a traffic violation. *See Yazdchi*, 428 S.W.3d at 837 (statutes reviewed de novo); *Amador*, 221 S.W.3d at 673 (de novo review of application-of-law-to-fact questions); *Estrada*, 154 S.W.3d at 607 (same); *Johnson*, 68

11

S.W.3d at 652–53 (same); *see also Tucker*, 369 S.W.3d at 185 (holding that appellate courts cannot uphold a finding if the video record does not support it); *Houghton*, 384 S.W.3d at 446 (same).

Having determined that the traffic-offense findings and conclusions made by the trial court in denying Wall's motion to suppress are not supported by the evidence, we sustain the portion of Wall's issue challenging these findings.

We next address Wall's alternative argument and the State's cross-point. Wall alternatively argues that we cannot affirm the trial court's denial of her motion to suppress on the ground that Officer Padgett possessed reasonable suspicion that Wall was engaged in the criminal activity of DWI because the trial court correctly found and concluded that he did not. The State argues that this finding by the trial court is not supported by the evidence.

Wall's prolonged stop at one flashing-yellow-light intersection and her delayed application of her brakes and quick, almost complete stop in the middle of the next flashing-yellow-light intersection were contextualized by Officer Padgett's testimony that he observed Wall driving at 2:00 a.m. on a weekend in a neighborhood with bars. According to Officer Padgett, intoxicated drivers are often confused by flashing traffic control signals, and he noted that he had made prior DWI stops at a flashing yellow light in "that exact area" of the road that Wall was travelling. Officer Padgett thus articulated something more than an "inchoate and unparticularized suspicion or 'hunch.'" *Foster,* 326 S.W.3d at 613–14. Considering the totality of the circumstances, Officer Padgett possessed

"some minimal level of objective justification for making the stop" because he pointed to specific and articulable facts—Wall's peculiar driving through two flashing-yellow-light intersections, the fact that intoxicated drivers are often confused by flashing-light intersections, the fact that Officer Padgett had made other DWI arrests in this very location at the flashing-light intersections, the fact that Wall was driving at 2:00 a.m. on a weekend in a location near bars—which, taken together with rational inferences from those facts, provided reasonable suspicion that Wall was engaged in criminal activity, DWI. *See Id.* (citing *Terry,* 392 U.S. at 15); *see also Derichsweiler,* 348 S.W.3d at 914; *Brother,* 166 S.W.3d at 257. The evidence, viewed in the light most favorable to the trial court's finding that Officer Padgett did not possess reasonable suspicion to initiate a temporary detention of Wall, does not support this finding. *See State v. Kerwick*, 393 S.W.3d 270, 273 (Tex. Crim. App. 2013) ("[R]easonable suspicion is a mixed question of law that is reviewed de novo on appeal."); *Amador*, 221 S.W.3d at 673 (noting de novo review of application-of-law-to-fact questions); *Estrada*, 154 S.W.3d at 607 (same); *Johnson*, 68 S.W.3d at 652–53 (same).

We overrule the portion of Wall's sole issue asserting that we should not affirm the denial of her motion to suppress on the ground that Officer Padgett possessed reasonable suspicion to stop her. We sustain the State's cross-point challenging the trial court's finding and conclusion that Officer Padgett did not possess reasonable suspicion to initiate a temporary detention of Wall. We affirm the trial court's denial of Wall's motion to suppress on this theory. *See*

*Stevens*, 235 S.W.3d at 740 (holding that appellate courts may uphold a trial court's judgment under any applicable theory of law supported by the record); *Armendariz*, 123 S.W.3d at 404 (same).

## VI. CONCLUSION

Having determined that the trial court's denial of Wall's motion to suppress was proper based on the theory that Officer Padgett possessed reasonable suspicion to initiate a temporary detention of Wall, we affirm the trial court's judgment.


/s/ Sue Walker
SUE WALKER
JUSTICE

PANEL:  LIVINGSTON, C.J.; WALKER and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  May 7, 2015

14