NO. 07-08-0309-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

SEPTEMBER 4, 2009

_____

TRAMAINE D. YOUNG, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 364TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2007-417.898; HONORABLE BRADLEY UNDERWOOD, JUDGE

_____

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

**MEMORANDUM OPINION**

Appellant, Tramaine D. Young, was convicted by a jury of burglary of a habitation

with intent to commit theft, enhanced.[1]  He was sentenced to fifty-five years confinement

---

[1]*See* Tex. Penal Code Ann. § 30.02(a)(1) (Vernon 2001).  Without the enhancement, this offense would have been a second degree felony punishable by confinement in the Institutional Division of the Texas Department of Criminal Justice for any term of not more than 20 years or less than 2 years and a fine not to exceed $10,000.  Tex. Penal Code Ann. § 12.34 (Vernon 2003).  Because the offense was enhanced by three

and ordered to pay $601 in restitution. Appellant contends the trial court erred by denying his motion to suppress and refusing to submit an article 38.23 instruction[2] to the jury. We affirm.

## Background

On September 4, 2007, a Lubbock County Grand Jury indicted Appellant for entering a habitation with intent to commit theft, enhanced by three prior felony convictions. On Appellant's motion, a suppression hearing was held and the following evidence adduced.

Officer Michael Chavez, Lubbock Police Department, testified that, on September 4, 2007, he investigated a home burglary at 1514 29th Place, Lubbock, Texas. He canvassed witnesses for the burglar's description and obtained a list of stolen items. He also obtained a description of the burglar's car–green in color with gray stripes twisting on the side of the car with a spoiler.

Officer Chavez surveilled the surrounding streets and stopped a car matching the description. The car was being driven by Nikki Wilson, Appellant's seventeen year old

_____

prior non-sequential felonies, the offense was punishable as a first degree felony. Tex. Penal Code Ann. § 12.42(b) (Vernon 2007).

[2]Article 38.23(a) of the Texas Code of Criminal Procedure (hereinafter referred to as "article 38.23") requires a trial court to issue a jury instruction when legal evidence at trial raises an issue of fact whether evidence was "obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America." Tex. Code Crim. Proc. Ann. art. 38.23 (2005).

sister. Nikki's description of her brother matched the description of the burglar given to Officer Chavez by witnesses to the burglary. She also told Officer Chavez where to find her brother.

Appellant had been living with his mother, Donna Fay Gilbert, and Nikki in a house located at 2615 1st Place, Lubbock, Texas, for approximately four months. His mother leased the house and Appellant helped pay rent and utilities. Donna Fay and Nikki had their own bedrooms. Appellant was staying in the living room and sleeping on the couch until he could get his own place. He stored his clothes and personal items in a hallway closet where his mother also stored blankets.

When Officers Chavez and Robert Escobedo arrived at the residence on 1st Place, Detective Wims was already positioned in the alley. Officer Chavez approached the front door and Officer Escobedo approached the side door. Appellant noticed the officers outside the house and opened the side door. Officer Escobedo asked him to step outside. When he did so, he was arrested,[3] handcuffed, and placed in the rear seat of a patrol car.

The officers contacted Nikki and her mother and asked them to return to the residence. Nikki picked her mother up at her workplace and they arrived at the residence approximately twenty minutes later. When Donna Fay and Nikki arrived, they observed Appellant in a patrol car that subsequently drove away.

---

[3]Although Detective Wims testified Appellant was detained after he came out of the house, Appellant testified he was arrested.

3

Officer Chavez approached Donna Fay and asked for her consent to search the residence. Officer Chavez then provided her with a written consent form.[4] She signed the consent form[5] and accompanied the officers while they searched the house. The officers found the victim's black/gold Addidas shoes next to the living room couch, VHS player, and Playstation with controllers and cords in Nikki's bedroom, Citizen's watch, gold bracelet, gold grill, and the victim's clothes in the hallway cabinet and unattached garage.

Detective Wims testified that officers typically seek consent to search a residence from the owner. He did not ask Appellant for consent because he believed the house belonged to Donna Fay and his investigation indicated Appellant had not been living in the house for very long. Officer Chavez testified it was not his practice to ask every household member for consent to search a residence.

During the suppression hearing, Appellant testified as to the events surrounding his arrest. Appellant was not asked and he did not offer any testimony as to whether or not he would have objected to a search of the residence if Officer Chavez would have sought his consent.

---

[4]The consent form listed the following items as stolen in the burglary being investigated: Playstation, Playstation games, gold bracelet, gold grill, DVD players, VCR, white pillowcase, black/gold Addidas shoes, miscellaneous clothes, citizens watch, or other stolen items.

[5]Donna Fay testified she was told the consent form was a search warrant and was threatened with arrest if she did not sign. Detective Wims and Officer Chavez testified Donna Fay was cooperative and there were no threats made to obtain her signature on the consent form. While the officers searched the house, she accompanied them identifying which items belonged in the house and those that did not belong.

At the conclusion of the hearing, the trial court denied Appellant's motion to suppress the evidence located in the house and unattached garage stating:

> The Court finds consent of the mother was freely, knowingly, and voluntarily. No threats or coercion by the officers. Consent was valid, officer's behavior exemplary and should be a model for other officers to use. The area where the defendant apparently slept was not partitioned in any way. It was the living room of the home that three occupants lived in. The Court finds that the mother had, certainly authority to grant permission to search not only that area, but the rest of the house. Motion denied.

Following a jury trial, Appellant was convicted of the offense of burglary of a habitation with intent to commit theft with enhancements. This appeal followed.

**Discussion**

Appellant contends the residential search was unreasonable because the officers purposefully removed him from the residence and placed him in a patrol car to avoid any possible objection he might have had to the search as a co-tenant. He also contends the trial court should have issued an article 38.23 instruction because the evidence at trial raised a fact issue whether the officers intended to avoid his possible objection to the search as a co-tenant by removing him from the residence.

The State contends a search premised on his mother's consent was reasonable because there is no evidence Appellant objected, or would have objected, to the search. Further, the State asserts no factual issue existed at trial whether the officers intended to

5

remove Appellant from the residence, prior to obtaining his mother's consent, in order to circumvent his possible objection to a search of the residence.

### I. Motion to Suppress

A trial court's ruling on a motion to suppress is reviewed for abuse of discretion, *Balentine v. State*, 71 S.W.3d 763, 768 (Tex.Crim.App. 2002), under a bifurcated standard. *Amador v. State*, 221 S.W.3d 666, 673 (Tex.Crim.App. 2007). When a trial court's fact findings are based on an evaluation of witness credibility or demeanor, almost total deference is given to its factual determinations supported by the record. *St. George v. State*, 237 S.W.3d 720, 725 (Tex.Crim.App. 2007). However, on questions of mixed law and fact that do not turn on the trial court's evaluation of witness credibility and demeanor, we conduct a *de novo* review. *Amador*, 221 S.W.3d at 673. Moreover, in reviewing a trial court's ruling on a motion to suppress, we review the evidence in a light most favorable to the trial court's ruling. *Gutierrez v. State*, 221 S.W.3d 680, 681 (Tex.Crim.App. 2007).

The burden is on the State to show that an exception to the warrant requirement existed at the time of the search. *See Neal v. State*, 256 S.W.3d 264, 282 (Tex.Crim.App. 2008). A warrantless search by police officers does not violate constitutional protections against unreasonable searches and seizures if officers obtain the consent of a third party possessing common authority over the premises to be inspected. *United States v. Matlock*, 415 U.S. 164, 171, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974). A third party's consent is valid if the facts available to the officer at the time of the search would allow a person of reasonable

caution to believe the consenting party had authority over the premises to be searched. *Illinois v. Rodriguez*, 497 U.S. 177, 188-89, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990). *See Brown v. State*, 212 S.W.3d 851, 868 (Tex.App.–Houston [14th Dist.] 2006, pet. ref'd).

Appellant does not dispute whether Donna Fay voluntarily consented to the search or whether her consent was valid. Rather, relying upon *Georgia v. Randolph*, 547 U.S. 103, 126 S.Ct. 1515, 164 L.Ed.2d 208 (2006)*,* Appellant maintains that, prior to seeking his mother's consent, the officers purposefully removed him from the scene to avoid a potential objection to a consensual search. He argues that the police should have sought his consent because he was a co-tenant and alone at the residence when the officers originally approached the house.

The facts of this case are quite similar to those of *Matlock, supra.* In *Matlock*, the accused was arrested in the front yard of a residence he shared with a Mrs. Graff and others. 415 U.S. at 164. Although the officers were aware the accused lived in the house, the arresting officers did not ask him which room he occupied or whether he would consent to a search but were admitted to the house after Mrs. Graff gave her consent. *Id.* In a closet shared by Mrs. Graff and Appellant, the officers seized a large amount of money. *Id.* Finding the search reasonable, the United States Supreme Court held that, when the prosecution seeks to justify a warrantless search by proof of voluntary consent, the prosecution is not limited by proof that the defendant consented, but "may show that permission to search was obtained from a third party who possessed common authority over or other sufficient

7

relationship to the premises or effects sought to be inspected." 415 U.S. at 171 (collected cases cited therein).

Similarly here, as in *Matlock,* Appellant was arrested outside the house and neither objected nor consented to a search of the residence. Although the officers knew Appellant lived in the house, they did not ask him which room he occupied or whether he would consent to a search. Rather, they obtained consent to search from his mother who leased the residence and lived there with Appellant and his sister. Accordingly, we find the trial court did not abuse its discretion in finding the search reasonable.

Appellant's reliance on *Georgia v. Randolph*, 547 U.S. 103, 126 S.Ct. 1515, 164 L.Ed.2d 208 (2006), is misplaced. In *Randolph*, the United States Supreme Court held "that a physically present inhabitant's express refusal of consent to a police search is dispositive as to him, regardless of the consent of a fellow occupant." *Id.* at 122-23. In that case, Randolph's wife called the police over a domestic dispute. *Id.* at 107. When the police arrived, Randolph's wife told them that Randolph used drugs and had drugs inside the house. Police asked Randolph for consent to search the house, and he expressly refused. Police then asked Randolph's wife for consent to search, which she granted. The United States Supreme Court held that Randolph's refusal to consent trumped his wife's subsequent consent. *Id.* at 120.

The present case is distinguishable from *Randolph* because Appellant was neither physically present when police asked Donna Fay for her consent, nor did he expressly object

8

to a search of the premises. Nevertheless, Appellant relies on the following statement in *Randolph* to assert that the search was unreasonable because the officers purposefully detained him in the patrol car to avoid a possible objection to a search of the residence prior to obtaining his mother's consent to the search:

> *So long as there is no evidence that the police have removed the potentially objecting tenant from the entrance for the sake of avoiding a possible objection,* there is practical value in the simple clarity of complementary rules, on recognizing the co-tenant's permission when there is no fellow occupant on hand, the other according dispositive weight to the fellow occupant's contrary indication when he expresses it.

547 U.S. at 121-22 (emphasis added).

In support, Appellant cites evidence that he was the only person at home when the officers arrived, he was immediately detained or arrested, isolated in a patrol car, and was never asked whether he would consent to a search. Appellant does not assert his detention, the length of his detention, or his arrest were improper. Distilled to its essence, then, his sole complaint is that the officers did not ask him whether he would consent to a search of the residence. The officers, on the other hand, testified they normally sought consent from the owner of the residence and believed the house belonged to Appellant's mother. They further testified that it was not their practice to seek consent from each household member prior to searching a residence.

Testimony that the officers did not ask Appellant's permission prior to seeking his mother's consent alone is not evidence of an intent to avoid a possible objection. This is

9

particularly so in the absence of any testimony that Appellant objected or would have objected if asked. Under these circumstances, we agree with the *Randolph* Court that:

> [I]t would needlessly limit the capacity of the police to respond to ostensibly legitimate opportunities in the field if we were to hold that reasonableness required the police to take affirmative steps to find a potentially objecting co-tenant before acting on the permission they had already received. There is no ready reason to believe that efforts to invite a refusal would make any difference in many cases, whereas every co-tenant consent case would turn into a test about the adequacy of the police's efforts to consult with a potential objector. Better to accept the formalism of distinguishing *Matlock* from this case than to impose a requirement, time consuming in the field and in the courtroom, with no apparent systemic justification.

547 U.S. at 122.

Appellant's first issue is overruled.

## II.       Article 38.23 Instruction

When reviewing alleged charge error, our review is a two-part inquiry. First, we determine whether error exists. *Druery v. State*, 225 S.W.3d 491, 504 (Tex.Crim.App. 2007) (citing *Almanza v. State*, 686 S.W.2d 157, 171-72 (Tex.Crim.App. 1985)). If error exists, then we determine whether the error caused sufficient harm to require reversal. *Id.*

A defendant must meet three requirements before he is entitled to submission of a jury instruction under article 38.23:

(1) The evidence heard by the jury must raise an issue of fact;

(2) The evidence on that fact must be affirmatively contested; and

10

(3) The contested factual issue must be material to the lawfullness of the challenged conduct in obtaining the evidence.

*Madden v. State*, 242 S.W.3d 504, 510 (Tex.Crim.App. 2007).

Appellant urges he was entitled to an article 38.23 instruction because the evidence at trial created a fact issue whether the officers purposefully removed him from the residence and placed him in the patrol car to avoid a potential objection to a search of the residence. He preserved this issue for appeal by objecting to the draft jury charge and obtaining an adverse ruling from the trial court. Tex. Code Crim. Proc. Ann. art. 36.14 (Vernon 2007). *See Loun v. State*, 273 S.W.3d 406, 416-17 (Tex.App.–Texarkana 2008, no pet.).

At trial, Officer Chavez testified that he went to Appellant's address after locating the car involved in the burglary, determined Nikki's description of the car's owner matched the burglar's description, and obtained Appellant's location.[6] When Officer Chavez initiated contact with Appellant, he observed Appellant matched the description of the burglar and the car's owner.[7] Officer Chavez then handcuffed Appellant and placed him in the rear seat

---

[6]Officer Chavez testified that witnesses described the burglar's car as a green Saturn, silver twisted stripes on the back and sides, a spoiler and an Automax sticker on the left rear side. The car stopped by Officer Chavez matched the Saturn's color, custom paint description, spoiler, and Automax sticker–type and location. The car was registered to Appellant.

[7]Officer Chavez also testified that witnesses to the burglary described the burglar as a black male, bald with glasses, approximately five feet eleven inches tall, weighing about one hundred seventy-five pounds, wearing a white tank top and grey sweat pants with cargo pockets. During the traffic stop initiated by Officer Chavez, Nikki's description of the car's owner, her brother, matched the description of the burglar. And, when Officer Chavez first initiated contact with Appellant, he observed Appellant was a black male, bald with glasses, wearing a white tank top and sweat pants with cargo pockets.

of his patrol car pending further investigation. With Appellant in custody, Officer Chavez and Detective Wims attempted to determine who owned the residence where Appellant was located. Detective Wims determined Appellant's mother leased or owned the house. Thereafter, Officer Chavez sought her consent to perform a search.

Detective Wims testified that he searched public records and law enforcement files to determine who owned the house. His investigation led him to believe the house was not Appellant's permanent residence. Although he was unclear whether Appellant's mother rented or owned the house, his investigation indicated she had the greatest access and control over the residence. As a result, Appellant's mother was contacted and asked to return to the house. She arrived within the hour and Appellant was taken away in the patrol car. After she consented to a search of the residence, the officers, accompanied by Donna Fay and Nikki, proceeded to search the house and unattached garage.

In an attempt to raise a fact issue, Appellant points to evidence that he was alone at the house when the officers arrived and the officers did not ask his permission to search. Instead, the officers requested his mother's presence; detained him approximately an hour in the patrol car until his mother arrived; and did not permit him to communicate with his mother prior to his departure from the residence.

Appellant fails to raise a question of fact and thereby fails to meet the first prong of the *Madden* test. *Madden,* 242 S.W.3d 510. Officer Chavez and Detective Wims consistently testified they detained Appellant until they could determine who was the owner

12

or primary tenant before requesting consent to perform a search. When they determined the owner was Appellant's mother, they requested her presence and, after she arrived, obtained her consent to search the house. There is no evidence Appellant objected, or would have objected, to the search.

At best, Appellant's evidence indicates he was a *"potential* objector, nearby but not invited to take part in the threshold colloquy." 126 U.S. at 121 (emphasis added). As such, the rule in *Matlock* is applicable. Accordingly, because Appellant failed to raise any disputed fact issue material to the admissibility of the stolen property discovered in the residence, we find that the trial court committed no error by denying an article 38.23 instruction. Appellant's second issue is overruled.

## Conclusion

The trial court's judgment is affirmed.

Patrick A. Pirtle
Justice

Do not publish.