02-10-355-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-10-00355-CR

 

 


 
 
 Ernest Henry Pacheco
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

 

FROM THE 43rd
District Court OF Parker COUNTY

----------

 

OPINION

----------

I.  Introduction

          Appellant
Ernest Henry Pacheco appeals the trial court’s denial of his motion to suppress
evidence.  After the motion was denied, Pacheco pleaded guilty to driving while
intoxicated, enhanced by two prior convictions for driving while intoxicated
and enhanced by the use of a deadly weapon.  See Tex. Penal Code Ann. §§ 49.04,
49.09 (West 2011).  The trial court sentenced Pacheco to thirty-five years’
confinement.  In his sole point, Pacheco argues that the trial court erred by
denying his motion to suppress because the procedure that police employed to
draw his blood was unreasonable.  We will affirm.

II.  Background Facts

          Around
1:50 a.m. on November 12, 2008, the Parker County Sheriff’s Office notified Officer
Clark of the Hudson Oaks Police Department that a person had called 911
complaining about a possible intoxicated driver traveling westbound on
Interstate 20, nearing Hudson Oaks.  The caller described a green, Chevrolet
pickup driving between thirty and ninety miles per hour, weaving, and driving
on the shoulder.  When the caller reported that the truck was approaching the
nearest exit to Officer Clark, Officer Clark spotted a vehicle matching the
description and followed it.  He observed the driver, Pacheco, weaving, driving
slowly, and swerving to avoid collisions with other cars.  Officer Clark
activated his overhead lights and eventually his siren, and Pacheco pulled over
to the side of the road.

          Officer
Clark testified that when he approached the truck, he smelled a strong odor of
alcohol emanating from Pacheco and his vehicle.  He also testified that Pacheco
had bloodshot and glassy eyes, slow reactions, poor and unsteady balance, and
slurred speech.  Pacheco admitted to Officer Clark that he had been drinking.  Officer
Clark administered the horizontal gaze nystagmus test and testified that the
test yielded six clues of intoxication.  Officer Clark arrested Pacheco for
driving while intoxicated, took him to the Hudson Oaks Police Department, and
read him his Miranda rights.  The dispatcher notified Officer Clark that
Pacheco had been convicted of driving while intoxicated on two prior
occasions.  Pacheco declined to give a breath specimen.

          Officer
Clark sought and obtained a search warrant for Pacheco’s blood, and he
transported him to Weatherford Regional Hospital.  Christy Smith, a medical
technologist certified by the American Society for Clinical Pathology, drew a
sample of Pacheco’s blood for testing.  Smith testified that she has more than
thirty years of experience as a medical technologist and that she has taken
thousands of blood samples in that capacity.  Smith wrote a reminder on a
sticky note after drawing Pacheco’s blood that said, “Pacheco, Ernest.
11/12/08. Hispanic male, short,” and “looked like Val,” one of Smith’s coworkers. 
Smith testified that she drew blood only from Pacheco that day and that she
followed the same procedure drawing his blood as she followed when drawing
samples from all patients.  According to Smith, the procedure follows
Weatherford Regional Hospital’s policies and protocols, and it does not require
the technologist to ask for a patient’s medical history before drawing blood.

          At
a pretrial hearing, Pacheco moved to suppress all evidence against him.  The
relevant challenges were Smith’s qualifications, the safety of the environment in
which Smith drew Pacheco’s blood, and the insufficiency of the paperwork
documenting the blood draw.  After hearing testimony from the arresting officer
and the medical technologist, the trial court denied Pacheco’s motion,
reasoning that Smith was qualified and that she had drawn Pacheco’s blood
according to hospital procedure.

III.  Motion
to Suppress

          In arguing that the police’s
search and seizure of his blood was unreasonable, Pacheco relies on this court’s
decision in State v. Johnston, 305 S.W.3d 746 (Tex. App.—Fort Worth 2009)
rev’d, 336 S.W.3d 649 (Tex. Crim. App. 2011).  There, we affirmed the
trial court’s decision to grant Johnston’s motion to suppress.  Id. at
759–60. 
Pacheco argues that “[i]n order for this Court to affirm the trial court’s
judgment herein it would have to overrule itself.”  But after the parties filed
their briefs in this appeal, the Texas Court of Criminal Appeals reversed our
decision in Johnston.  See Johnston, 336 S.W.3d at 664.  Therefore, we
will apply the test for determining the reasonableness of a blood draw under
the Fourth Amendment as the court of criminal appeals explained in Johnston. 
Id. at 658–59.

          A.      Standard
of Review

          When
reviewing a trial judge’s ruling on a motion to suppress, we view all of the
evidence in the light most favorable to the trial judge’s ruling.  Id.
at 657; State v. Garcia-Cantu, 253 S.W.3d 236, 241 (Tex. Crim.
App. 2008); Gutierrez v. State, 221 S.W.3d 680, 687 (Tex. Crim. App.
2007).  We afford almost total deference to a trial judge’s determination of
historical facts that the record supports.  Guzman v. State, 955 S.W.2d
85, 89 (Tex. Crim. App. 1997).  This same highly deferential standard applies
regardless of whether the trial judge has granted or denied a motion to
suppress evidence.  Garcia-Cantu, 253 S.W.3d at 241.  Thus, the party
that prevailed in the trial court is afforded the strongest legitimate view of
the evidence and all reasonable inferences that may be drawn from that
evidence.  Id.  We also afford almost total deference to a trial judge’s
ruling on mixed questions of law and fact when resolution of those questions
depends upon evaluations of credibility and demeanor.  Guzman, 955
S.W.2d at 89.  But the question of whether police executed the search warrant
using reasonable means and procedure is subject to de novo review
because the application of legal principles to a specific set of facts is a
question of law.  See Garcia-Cantu, 253 S.W.3d at 241.

          B.      Fourth
Amendment Reasonableness of Drawing Blood

          A
blood draw constitutes a search and seizure under the Fourth Amendment.  Schmerber
v. California, 384 U.S. 757, 758–59, 86 S. Ct. 1826, 1829 (1966).  The
“Fourth Amendment’s proper function is to constrain, not against all intrusions
as such, but against intrusions which are not justified in the circumstances,
or which are made in an improper manner.”  Id. at 768, 86 S. Ct. at 1834. 
The Supreme Court has set out a two-step test for determining the
reasonableness of a blood draw.  Id.  A blood draw is reasonable under
relevant Fourth Amendment standards if:

(1)        
the
police had justification in requiring the suspect to submit to a blood test,
and

 

(2)        
the
police employed reasonable means and reasonable procedures in taking the
suspect’s blood.

 

See
Johnston, 336 S.W.3d at 658.  Pacheco does not challenge whether
police had justification for the stop, detention, arrest, or search warrant.  Therefore,
we only address the second step and determine whether the police employed
reasonable means and reasonable procedure in taking Pacheco’s blood.

          Pacheco
challenges “the method and procedure used” in executing the search warrant.  The
State argues that “the record supports the trial court’s factual findings that
the manner in which the search warrant for [the blood] sample was executed was
reasonable under the Fourth Amendment.”

          The
second step in the reasonableness analysis has two distinct parts.  First, in
determining whether the police employed reasonable means to test Pacheco’s
blood, we must determine whether Clark chose a reasonable test.  Second, in
determining whether police employed a reasonable procedure, we must determine
whether Clark and Smith performed the test in a reasonable manner.  Schmerber,
384 U.S. at 771, 86 S. Ct. at 1836.

                   1.       Reasonableness
of the Chosen Test

          Pacheco
argues that Clark and Smith failed to obtain Pacheco’s “general medical
history” and that “no follow up was done.”  Pacheco contends that this failure
subjected him to “an unreasonable risk of medical harm that made the blood draw
unreasonable under the 4th Amendment of the United States Constitution.”  The
State argues that the “highly trained, educated, experienced, and certified
medical technologist who drew [Pacheco’s] blood in a hospital testified that
she does not conduct either procedure as part of her normal blood draw routine,
but she did follow hospital policy and procedure . . . .  Therefore,
neither was medically necessary in this case.”

          For
the general population, the Supreme Court has determined that a blood test is a
reasonable means in which to analyze an individual’s blood alcohol level.  Id.;
see also Breithaupt v. Abram, 352 U.S. 432, 435–36, 77 S. Ct. 408, 410
(1957) (explaining that those entering the military, marrying, or going to
college must take blood tests and millions voluntarily donate blood so the
“blood test procedure has become routine in our everyday life”); Johnston,
336 S.W.3d at 659.  Courts may deem blood testing to be unreasonable over
another method of testing when “the few who on grounds of fear, concern for
health, or religious scruple might prefer some other means of testing.”  Schmerber,
384 U.S. at 771, 86 S. Ct. at 1836.  But failing to inquire into an individual’s
medical history before drawing blood and failing to conduct a follow-up
examination do “not render blood draws per se unreasonable.”  Johnston,
336 S.W.3d at 659.  Therefore, the suspect has the burden to show that the type
of test employed was “not a reasonable means to obtain a blood alcohol level
assessment as to him or her individually.”  Id. at 660.  The
record must contain evidence showing that the police chose a test that was not
reasonable due to a “verifiable medical condition,” or we will presume that the
choice to administer the test is reasonable.  Id.

          Here,
the record contains no evidence that Pacheco suffers from a medical condition
that would have made another means of testing preferable.  See id.  And
Pacheco is not one of “the few who on grounds of fear, concern for health, or
religious scruple might prefer some other means of testing,” as Pacheco had
already refused to give a breath specimen.  See Schmerber, 384
U.S. at 771, 86 S. Ct. at 1836.  Because Smith’s failure to ask Pacheco about
his medical history and conduct a follow-up examination did not render the draw
unreasonable, we conclude that the police chose a reasonable means to obtain a
blood alcohol assessment as to Pacheco, individually.

                   2.       Reasonableness
of the Manner of Performance

          Pacheco
argues that Clark and Smith did not perform the procedure in a reasonable
manner because the paperwork documenting the blood draw was incomplete.  He
contends that the “lack of identifiers places a patient at risk”; that medical
procedures concerning the identity of the patient are “critical to preventing,
diagnosing[,] and treating a person and can prevent unreasonable risks of
medical harm”; and that it “creates unreasonable risks of medical harm.”  The
State argues that Pacheco failed to demonstrate how some clerical errors in the
accompanying paperwork rendered the blood draw constitutionally unreasonable.

          Police
officers act reasonably when drawing blood if they act in accordance with
accepted medical practices, including the equipment and technique that they
employ.  Johnston, 336 S.W.3d at 663.  The Supreme Court has
explained that tolerating searches that were conducted by unqualified personnel
or outside a medical environment may “invite an unjustified element of personal
risk of infection and pain.”  Schmerber, 384 U.S. at 772, 86 S. Ct. at
1836.  Searches justified by a valid warrant have a presumption of legality
unless the opponent produces evidence rebutting the presumption of proper
police conduct.  Amador v. State, 221 S.W.3d 666, 672 (Tex. Crim. App.
2007).  “[T]he reasonableness of the manner in which a DWI suspect’s blood is
drawn should be assayed on an objective, case-by-case basis in light of the
totality of the circumstances surrounding the draw.”  Johnston, 336
S.W.3d at 661.

          Pacheco’s
argument that identifiers can prevent unreasonable risks of harm is misplaced
because the standard is whether the blood was drawn in accordance with accepted
medical practices, and Smith testified that she followed both the hospital’s
policy for drawing blood and the directives of her certification on how to draw
blood.  Pacheco argues that the lack of “identifiers” put him at “risk of
medical harm,” but he fails to explain how he was at risk.  Without more,
Pacheco has failed to satisfy his burden to rebut the presumption of
reasonableness.  The record contains evidence supporting the trial court’s
conclusion that “the manner in which [Pacheco’s] blood was drawn was
reasonable.”

          Under
the totality of the circumstances, we hold that the equipment and technique
Smith employed to draw Pacheco’s blood followed medically accepted practices
and was therefore reasonable.  See Johnston, 336 S.W.3d at 662–63
(holding “Johnston’s blood was drawn in accordance with acceptable medical
practices and was therefore reasonable.”).  The circumstances here did not
“invite an unjustified element of personal risk of infection or pain.”  See
Schmerber, 384 U.S. at 771, 86 S. Ct. at 1836.

IV.  Conclusion

          Because
the police were justified in requiring Pacheco to submit to a blood test and
because Smith and Clark employed reasonable means and reasonable procedures in
drawing Pacheco’s blood, we conclude that the record shows no violation of
Pacheco’s right under the Fourth and Fourteenth Amendments to be free from
unreasonable searches and seizures.  Thus, we overrule Pacheco’s sole point and
affirm the trial court’s order denying his motion to suppress.

 

 

 

BILL MEIER
JUSTICE

 

PANEL: 
LIVINGSTON,
C.J.; MEIER, J.; and DIXON W. HOLMAN (Senior Justice, Retired, Sitting by
Assignment).

 

PUBLISH

 

DELIVERED:  July 28, 2011