In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-10-00221-CR

                                                ______________________________

 

 

                                        BROCK JERNIGAN,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                         On Appeal from the 5th Judicial District Court

                                                             Bowie County, Texas

                                                       Trial Court
No. 05F0226-005

 

                                                      
                                            

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                              Memorandum Opinion by Justice Carter

 

 








                                                      MEMORANDUM OPINION

 

            Brock
Jernigan was placed on deferred adjudication community supervision for five
years after pleading guilty to the offense of evading arrest with a
vehicle.  Capias issued prior to the
expiration period pursuant to the State’s motion to adjudicate guilt based upon
an alleged “Battery First Degree” committed by Jernigan in Arkansas.  The trial court found Jernigan failed to
abide by the condition of community supervision that he “commit no offense
against the law of this or any State,” adjudicated him guilty of evading arrest
with a vehicle, and sentenced him to two years’ confinement.  Jernigan appeals the judgment adjudicating
guilt on grounds that the trial court erred in:  (1) denying a motion to suppress his
confession in the Arkansas case; (2) not awarding Jernigan “his back time”; and
(3) denying Jernigan an appellate bond. 
We affirm the trial court’s judgment because:  (1) we find that the trial court properly
overruled the motion to suppress; (2) the record does not reveal the amount of
time Jernigan spent in jail entitling him to the specific credit he seeks; and
(3) we lack jurisdiction over the order denying the appeal bond. 

I.         Jernigan’s Motion to Suppress Was
Properly Overruled

 

            The
State called Officer Wayne Easley with the Texarkana, Arkansas Police
Department, who testified that Jernigan’s fifteen-month-old stepdaughter was
admitted to a Little Rock Hospital for “massive head injuries.  The back of her skull was busted and caved
in.”  Easley brought Jernigan in for
questioning.  After advising him of his
rights, Easley obtained Jernigan’s signature stating that he understood the
Miranda[1]
warnings that were issued and that he wished to waive his rights.[2]  

            The State
sought to introduce Jernigan’s confession during the interrogation.  Contending “that in the middle of the
interview [Jernigan] invoked his right to counsel,” Jernigan’s counsel asked “that
any statement that Brock Jernigan made that day be suppressed.”  Counsel’s voir dire examination of Easley
produced the following transcript:

            Q         At some point in the interview, did Mr.
Jernigan say, “Do I need to get a lawyer?”

 

            A         He asked, “Do I need a lawyer?”

 

            Q         Okay. 
And what was your response?

 

            A
        I said, “It’s up to you.  If you want a lawyer, you can have one.  You’ve got the right to talk to me and you’ve
got the right to stop talking to me.”

 

            Q         Okay. 
And then, along these same lines, did he say, “Can I talk to one?”

 

            A         Yes. 
And we told him, “Yes, he can.  He
had the right to stop.  He had the right
to stop talking to us at any time.  It
was his choice.  I explained the Miranda
warning as we read it to him at the beginning of the deal. . . . he told me he
wanted to talk to me, he’s continued to talk. 
He never did break down from not talking or in any way indicate that he
did not want to talk to me.”

 

            We review a
trial court’s decision to admit or exclude evidence for an abuse of discretion.
De La Paz v. State, 279 S.W.3d 336,
343 (Tex. Crim. App. 2009); McDonald v.
State, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005).  Under this standard, an appellate court should
not disturb the trial court’s decision if the ruling was within the zone of
reasonable disagreement.  De La Paz, 279 S.W.3d at 343–44; Bigon v. State, 252 S.W.3d 360, 367
(Tex. Crim. App. 2008).  If a suspect
requests counsel at any time during a custodial interview, “he is not subject
to further questioning until a lawyer has been made available or the suspect
himself reinitiates conversation.”  Davis v. United States, 512 U.S. 452,
459 (1994).  This secondary Miranda right to counsel is “designed to
prevent police from badgering a defendant into waiving his previously asserted Miranda rights.”  Id. at
458.  “A suspect who has invoked the
right to counsel cannot be questioned regarding any offense unless an attorney
is actually present.”  Id.  However,
in the context of invoking the Miranda
right to counsel, a suspect must do so “unambiguously.”  Berghuis v. Thompkins, __U.S.__,
130 S.Ct. 2250, 2259–60 (2010).  “[I]f a
suspect makes a reference to an attorney that is ambiguous or equivocal in that
a reasonable officer in light of the circumstances would have understood only
that the suspect might be invoking
the right to counsel,” the police are not required to end the interrogation, or
ask questions to clarify whether the accused wants to invoke his or her Miranda rights.  Davis,
512 U.S. at 459.

            The trial
court reviewed the following conversation between Jernigan and the
interrogating officers which transpired after Jernigan was asked to take a
polygraph examination:

            BJ[3]:      Do I need to get a lawyer?  I mean?

 

            WE[4]:    Well that is you’re [sic] choice.

 

            BJ:      I
mean I don’t know. 

 

            WE: 
  That is you’re [sic] choice; you
got the right as we read in these right[s] you got the right to stop this thing
at any time.  You understand?

 

            BJ:       I
mean I am telling you the truth, I don’t think I need one but, I mean. 

 

            CL[5]:     Okay you don’t need one then is that what
you think?

 

            WE:     Yeah,
it is totally up to you. 

 

            BJ:       Can
I talk to one first?

 

            WE:     First
before what?

 

            BJ:      Before
anything else happens I mean, I am telling yall [sic] the truth I am just
scared.  I am real scared right now and I
have been the whole time. 

 

            WE:    So
you don’t want to talk to us no more or you do want to talk to us?

 

            CL:      Are
you talking about the polygraph?

 

            BJ:      I
don’t, I don’t know. . . . Just in general right now, I mean I am scared I don’t.  I didn’t do it on purpose.  I didn’t do it on purpose, I am scared right
now. 

            

Jernigan proceeded with the interview and confessed to the
details of the battery.  

 

            In Davis the defendant stated, “Maybe I
should talk to a lawyer,” and the United States Supreme Court found that was
not an unambiguous request for counsel.  Id. at 462.   The Texas Court of Criminal Appeals has
likewise required an unambiguous assertion of the right to counsel.  Davis
v. State, 313 S.W.3d 317 (Tex. Crim. App. 2010) (defendant’s statement
during police interview, “I should have an attorney” did not expressly invoke
the right to counsel).  Here, the trial
court found that there was “not a clear, unambiguous invocation of the right to
counsel.”  We  agree with the trial court’s ruling. 

             The transcript of the interrogation reveals
that Jernigan first asked “do I need to get a lawyer, I mean?”  The officers explained that was his right and
that he could “stop this thing at any time.” 
Jernigan then stated, “I don’t think I need one, but, I mean,” and
finally asked, “Can I talk to one first?” 
The first statement merely asked about his right to counsel or asked the
officers their opinion on whether he should obtain counsel, and thereafter Jernigan
stated he did not think he needed counsel. 
Finally, he asked if he “could talk to one [lawyer] first.”  Jernigan never expressly stated that he
wanted a lawyer.  We are to evaluate
whether Jernigan’s right to counsel was invoked based on the totality of the
circumstances surrounding the statement. 
Id. at 339.  Based on precedent from the United States
Supreme Court and the Texas Court of Criminal Appeals, we find that Jernigan
did not clearly and unambiguously invoke his right to counsel and that a
reasonable officer in light of the circumstances would have understood only
that Jernigan “might be invoking the
right to counsel.”  Davis, 512 U.S. at 459.  Because
Jernigan did not unambiguously request counsel, the trial court properly
overruled the motion to suppress. 

            We overrule
Jernigan’s first point of error.

  

II.       The Record Does Not Support Jernigan’s
Claim to Additional Credit 

 

            The trial court granted Jernigan
“credit for any time that he’s served since his date of arrest on the motion to
revoke probation in this matter.” 
Jernigan claims that the trial court erred when it only gave him a
twenty-six-day credit in the final written judgment.  He complains that the officer’s return on the
capias was executed on September 16, 2010, that the trial was held “on or about
November 10, 2010,” and that therefore he should be entitled to a credit of
fifty-seven days.  The record contained
an “order modifying bond and conditions of bond” signed on October 13,
2010.  Aside from these documents, there
is no other indication from the record as to the actual number of days Jernigan
spent in jail.  

            It was
Jernigan’s burden to bring forward a record on appeal sufficient to show that
the trial court erred in assessing the credit to be applied.  See
Amador v. State, 221 S.W.3d 666, 675 (Tex. Crim. App. 2007); Guajardo v. State, 109 S.W.3d 456, 462
n.17 (Tex. Crim. App. 2003) (“It is . . . the appealing party’s burden to
ensure that the record on appeal is sufficient to resolve the issue he
presents.”).  Recognizing this, Jernigan
asks this Court to 

order
the trial court to require the District Attorney for Bowie County, Texas, to
present it with the full and correct assessment of all time Defendant has
served in this case, and thereafter ensure that the trial court judgment award
[sic] proper credit for all prior time incarcerated as presented therein.

 

            We decline
to issue this request for production of documents.  Since the record does not support Jernigan’s
claim to relief requested, his second point of error is overruled.[6]

III.      Jernigan Failed to Separately Appeal Denial
of Appeal Bond

 

             The trial court entered an order denying
Jernigan’s motion for the court to set bail pending appeal on May 11,
2011.  Article 44.04(g) of the Texas Code
of Criminal Procedure, entitled “Bond pending appeal,” provides that “[t]he
right of appeal to the Court of Appeals of this state is expressly accorded the
defendant for review of any judgment or order made hereunder, and said appeal
shall be given preference by the appellate court.”  (West 2006). 
This statute “provides a separate, expedited appeal of such orders.” Ortiz v. State, 299 S.W.3d 930, 932
(Tex. App.—Amarillo 2009, no pet.). 
Because an Article 44.04 appeal is separate “from the appeal of the
conviction and punishment,” “it must be perfected by a separate notice of
appeal.”  Davis v. State, 71 S.W.3d 844, 845 (Tex. App.—Texarkana 2002, no
pet.); Ortiz, 299 S.W.3d at 933. 

             “An appellate court lacks jurisdiction to
consider an appeal absent a timely filed notice of appeal.”  Ortiz,
299 S.W.3d at 933.  Here, Jernigan failed to separately appeal
from this order denying appellate bond. 
Therefore, we lack jurisdiction over Jernigan’s last point of error,
which we dismiss.  

IV.      Conclusion 

 

            We affirm the trial court’s
judgment. 

 

 

 

                                                                                    Jack
Carter

                                                                                    Justice

 

Date Submitted:          October
18, 2011        

Date Decided:             October
19, 2011

 

Do Not Publish           

 

 











[1]Miranda v. Arizona, 384 U.S. 436 (1966).


 





[2]It
was not asserted that the Miranda
warnings were improper or that Jernigan did not understand them and thereafter
voluntarily consented to an interrogation. 






[3]Refers
to Jernigan.





[4]Refers
to Easley.





[5]Refers
to Detective Lee.  Lee’s first name is
not mentioned in the record. 





[6]“Pre-sentence
time credit claims typically must be raised by a motion for judgment nunc pro tunc filed with the clerk of
the convicting trial court.”  Ex parte Florence, 319 S.W.3d 695, 696
(Tex. Crim. App. 2010).