

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-11-00153-CR
### NO. 02-11-00154-CR

SHAUGHNNA BLACKMON                                           APPELLANT

V.

THE STATE OF TEXAS                                                  STATE

----------

FROM COUNTY CRIMINAL COURT NO. 2 OF DENTON COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### I.  Introduction

In two issues, Appellant Shaughnna Blackmon appeals her two convictions for the misdemeanor offense of false alarm or report.  We affirm.

---

[1] *See* Tex. R. App. P. 47.4.

## II. Factual and Procedural Background

Prior to and during April 2009, Jon Willingham, who lived at 1179 Marquette, across an alley from Blackmon, made a series of calls to the Frisco Police Department to complain about noise from Blackmon's home.

Frisco Police Officer Brian Tschudy testified that on April 16, he was dispatched to Blackmon's house on a noise complaint. Around five minutes later, he was dispatched to Willingham's house because an anonymous 9-1-1 caller reported that a man was beating his wife. Officer Tschudy determined that no assault had occurred. A subsequent investigation revealed that the anonymous call had come from Blackmon's cell phone.

On April 21, 2009, around 3 a.m., Officer Tschudy was dispatched to Willingham's house because an anonymous 9-1-1 caller claimed that it sounded like Willingham was beating his wife again. Officer Tschudy found that the Willinghams had been sleeping and that no assault had taken place. A subsequent investigation revealed that this call had also been made from Blackmon's cell phone.[2]

---

[2]Frisco Police Officer Avery Jones testified that on April 20, 2009, he was dispatched to Willingham's house on a noise complaint around 12:19 p.m. and then dispatched again at 1:52 p.m. regarding a woman screaming. However, according to the State, no criminal charges were filed for this call.

The trial court allowed the State to publish the following 9-1-1 recordings from April 2009[3]:

Call 1:

Dispatcher:  Frisco Police Department.

Blackmon:  Ma'am I need you guys to dispatch an officer out to 1179 Marquette please there is a woman over there screaming and um I think *her husband is beating on her*, I . . . I'm really not sure but I've heard this a couple of times and it really concerns me I mean she's just belching out screaming.

Dispatcher:  Okay then *she's being beat by her husband?*

Blackmon:  Um, *yes*, ma'am

    . . . .

Blackmon:  I heard the door open and I heard her come out and and scream and it seem like somebody was grabbing her back or whatever and then I heard the door close.

    . . . .

Dispatch:  And again the screaming is coming from 1179 Marquette?

Blackmon:  Yes ma'am.  [Emphasis added.]

Call 2:

Dispatcher:  Frisco Police Department.

Blackmon:  Yes ma'am um I need you guys to have an officer dispatched, I believe *this woman is over here being beaten again*.

Dispatcher:  What address?

[3]Blackmon made four calls, but only the three set out below are pertinent to this appeal.

3

Blackmon:  1179 Marquette Drive.

Dispatcher:  And have you called this in before? What do you mean by again?

Blackmon:  I've called before this woman . . . there's yelling and screaming and I know you know today her and her husband are home and it only seems to happen when he's home.  [Emphasis added.]

Call 3:

Dispatcher:  Frisco Police Department.

Blackmon:  Yes um I need to see, can you guys have somebody uh to come out and . . . help this woman over here she's screaming and hollerin' in the middle of the night . . .

Dispatcher:  What's the address I need to send an officer to?

Blackmon:  1179 Marquette.

        . . . .

Dispatcher:  What is she screaming and yelling about?

Blackmon:  . . . there's a *man over there be whooping on her* . . . I don't know if I'm gonna get back to sleep now.  [Emphasis added.]

Willingham said that Blackmon flagged him down in his driveway one day and apologized for making the false reports.  Blackmon was arrested four months later on an unrelated charge.  Frisco Police Detective Billy Clay interviewed her about the anonymous 9-1-1 calls, and Blackmon confessed to making false reports.

The State filed two informations alleging, respectively, that on or about April 16, 2009, and on or about April 21, 2009, Blackmon "did then and there knowingly communicate a report of a present offense, to-wit:  that an assault was

4

occurring, and the defendant knew that said report was false or baseless and would ordinarily cause action by an official agency organized to deal with emergencies, namely, Frisco Police Department." At the conclusion of the guilt-innocence phase of trial, the jury found Blackmon guilty in both cases, and the trial court sentenced her to 365 days' confinement in each case, to run concurrently. This appeal followed.

### III. Sufficiency

In her first issue, Blackmon asserts that there was insufficient evidence that she reported the commission of an assault because she only referenced hearing a woman screaming and did not report that any action was being observed by her. The State responds that Blackmon recounted facts in her calls such that the listener would believe an assault was taking place.

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

In its two informations, the State alleged that Blackmon knowingly communicated a report that an assault was occurring and knew that said report was false or baseless and would ordinarily cause action by the Frisco Police Department. *See* Tex. Penal Code Ann. § 42.06(a)(1) (West 2011). Assault

5

occurs when a person intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse. *Id*. § 22.01(a)(1) (West 2011).

The record reflects that the 9-1-1 caller, identified as Blackmon, reported to the police that she heard a woman screaming and that she thought that the woman's husband was "beating on her," that "this woman is over here being beaten again," and that "there's a man over there be whooping on her." Based on these recordings, the jury was entitled to believe that Blackmon was attempting to report an assault when she made her false reports. *See id*. § 22.01(a)(1); *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Isassi*, 330 S.W.3d at 638. We overrule Blackmon's first issue.

## IV. Suppression

In her second issue, Blackmon argues that the trial court erred by failing to suppress her videotaped confession because it was involuntary. She contends that she was denied food, water, medication, or permission to make any phone calls for over eight hours and that one of the officers threatened her son. The State responds that the evidence showed that none of Blackmon's allegations concerning her confession were accurate.

## A. Findings of Fact and Conclusions of Law

We abated this case so that the trial court could make findings of fact and conclusions of law with regard to the voluntariness of Blackmon's confession. *See* Tex. Code Crim. Proc. Ann. art. 38.22, § 6 (West 2005); *Urias v. State*, 155 S.W.3d 141, 142 (Tex. Crim. App. 2004) (stating that when the voluntariness of a

6

statement is challenged, article 38.22, section six of the code of criminal procedure requires the trial court to make written fact findings and conclusions of law as to whether the challenged statement was made voluntarily).

The State filed the following proposed findings of fact and conclusions of law, which the trial court adopted:

*FINDINGS OF FACT*

1. During trial on the merits, the trial court held a hearing outside the presence of the jury on the matter of the voluntariness of Appellant's statements made to law enforcement. At the conclusion of the hearing, the trial court found that Appellant's statements were voluntary. . . .

2. On August 15, 2009, Appellant was arrested by the Frisco Police Department on charges unrelated to the April 16, 2009[] and April 21, 2009[] false reports that are the subject of this case.

3. After her arrest, Appellant was interviewed by Detective Seelye of Frisco P.D. about these unrelated charges.

4. Appellant made a verbal acknowledgment of her *Miranda* and article 38.22 rights. Appellant also signed a written waiver of her *Miranda* and article 38.22 rights at 7:55 p.m., which is reflected on the video recording of the interview conducted by Frisco P.D. . . .

5. After Detective Seelye finished with Appellant, Detective Clay of Frisco P.D. entered the interview room to see if he could visit with Appellant about the false reports to law enforcement that form the basis of this case, and during that

7

interview, Appellant admitted to reporting false assaultive offenses to Detective Clay.

6. Before Appellant made the admission, Appellant had been transported to the jail. Detective Clay told Appellant that if she wanted to talk, to tell the jail staff. At that point, Appellant told Detective Clay that she wanted to be truthful and talk, so Detective Clay transported her back to the interview room, where she made the admissions.

7. Nothing of substance was discussed outside the interview room.

8. Appellant was given the opportunity to read the statement of her constitutional rights and the Frisco P.D. detectives read those rights to her and she understood those rights.

9. Although Appellant testified that her confession was coerced by law enforcement because of promises made to her by law enforcement or coercion relating to the athletic career of her son, Appellant's testimony on these matters was not credible.

10. There is no credible evidence of Frisco P.D.'s promising to have Appellant's bond on other charges reduced in exchange for answering questions relating to the instant charges. Detective Clay did not threaten Appellant's son's athletic or academic career or make any promises to Appellant about bond reductions or any other matter.

*CONCLUSIONS OF LAW*

1.  Appellant was given the required Miranda-type statutory warnings and voluntarily waived her rights on the recording.

2.  Appellant's confession was not obtained by the use of violence or threat of any kind, by any direct or implied promise, or by the exertion of any improper influence.

3.  Appellant's statements were made voluntarily.

[Citations omitted.]

**B.  Standard of Review**

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review.  *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We give almost total deference to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor, but we review de novo application-of-law-to-fact questions that do not turn on credibility and demeanor.  *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002).  When the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those fact findings. *State v. Kelly*, 204 S.W.3d 808, 818–19 (Tex. Crim. App. 2006).  We then review

the trial court's legal ruling de novo unless its explicit fact findings that are supported by the record are also dispositive of the legal ruling. *Id.* at 818.

Our review of the voluntariness of any statement from an accused is under the totality-of-circumstances standard. *Delao v. State*, 235 S.W.3d 235, 239 (Tex. Crim. App. 2007), *cert. denied*, 552 U.S. 1168 (2008). An accused's statement may be used in evidence against him if it appears that the same was freely and voluntarily made without compulsion or persuasion. *See* Tex. Code Crim. Proc. Ann. art. 38.21 (West 2005). A confession may be involuntary when there is coercive police activity or when a confession is given under the duress of hallucinations, illness, medications, or a private threat. *Oursbourne v. State*, 259 S.W.3d 159, 169–73 (Tex. Crim. App. 2008) (explaining the distinctions between the theories applicable to the voluntariness of a confession under articles 38.21 and 38.22, the Due Process Clause, and *Miranda*).

## C. Evidence

Blackmon recounted that she was arrested on August 15, 2009, "somewhere between 11:00 a.m. in the morning and noon that day," and that she was there for eight hours before she was questioned.[4] Blackmon testified that during those eight hours, she did not receive anything to eat or drink or any allergy medication and that she was not allowed to make a phone call.

---

[4]The record does not otherwise reflect what time Blackmon was arrested but it does reflect that Blackmon was interviewed on an unrelated charge involving her son from 7:53 p.m. until 9:00 p.m. She was interviewed on the two false report charges from 9:01 p.m. until 10:28 p.m.

Blackmon also stated that she learned that her son Spencer had been arrested that day and that Detective Clay made threats regarding her son so that she would confess. She said that Detective Clay "slammed the paper down in front of [her] saying $50,000 bond," and that Detective Clay said that "if [she] said what . . . he needed [her] to say that he was going to talk to the judge to get [her] bond reduced."[5] Blackmon said that she did not have a choice about talking to the police because of the threats to her son and the bond amount, which she could not afford.

During cross-examination, Blackmon testified that she did not recall an officer making promises to get her bond reduced. She also said that she did not recall asking for her allergy medication or the detective telling her he would make sure she could call someone for her allergy medication.

The State presented the following testimony by Detective Clay concerning Blackmon's allegations:

> Q. Detective Clay, on August 16th of 2009 in your interactions with the defendant, at any time did you ever promise to go to the judge and have her bond reduced if she would cooperate and confess to you?
>
> A. Absolutely not.
>
> Q. At any time did you ever not promise but suggest that you would go to the judge if she cooperated with you?

---

[5]The record reflects that Blackmon's bond was originally set at $10,000 for each of the false report charges. Blackmon subsequently filed motions to reduce bond, and the bond on each case was reduced to $1,000.

A. Absolutely not.

Q. Did you ever go to the judge and—after she made her confession and try to get her bond reduced?

A. No, ma'am.

Q. Detective Clay, at any time did you speak with the defendant regarding charges that her son was facing?

A. No.

Q. Specifically did you threaten her that if she did not tell you what you wanted to hear that you would charge her son with rape?

A. Absolutely not.

Q. Did you threaten her son—or did you threaten the defendant that if she did not tell you . . . what you wanted to hear that you would charge her son and he would not be able to go off to a nice Christian school?

A. Absolutely not.

Q. At any time did you make any threats or promises of any type to this defendant in regards to getting her to speak with you in response to these false—or false report charges?

A. Absolutely not.

Q. In fact, when she was talking to you in the interrogation room she was having problems with her allergies.

A. Yes.

Q. And in response to that you even told her that you would try to get her her allergy medication?

A. Correct.

Q. And while you were telling her that you would try to get her her allergy medication, during that conversation you tell her that you even think Spencer is out of jail?

A. Correct.

12

Q. So at that point you weren't threatening to keep Spencer in jail indefinitely if she didn't tell you what you wanted to hear?

A. Absolutely not.

Q. In fact, did she tell you over and over again that, "Please, let me give you this information?"

A. She did offer the information, and even stated at one point, "I know you can't make me any promises."

State's Exhibit 1, Blackmon's videotaped confession, confirms Officer Clay's testimony recounted above. The trial court also admitted State's Exhibit 7, the written waiver of rights signed by Blackmon at 7:55 p.m.

## D. Analysis

The record reflects that Blackmon testified to one set of circumstances surrounding her confession and that Officer Clay testified that none of her complained-of circumstances occurred. State's Exhibit 1 substantiates Officer Clay's version of events. Taking into account the foregoing and bearing in mind the deference afforded to factual determinations made by the trial court, we hold that the trial court did not err by refusing to suppress Blackmon's confession.

## V. Alleged Failure of Proof

For the first time in her reply brief, Blackmon alleges that while the State offered evidence that the location of the residences of Blackmon and Willingham were in Denton County, the State did not present proof of the location of the initiation of the communication by Blackmon.

Blackmon points to no place in the record where this was brought to the trial court's attention, and we are not required to search the record in search of her proof. *See Busby v. State*, 253 S.W.3d 661, 673 (Tex. Crim. App.) (stating that the court "has no obligation to construct and compose appellant's issues, facts, and arguments 'with appropriate citations to authorities and to the record'"), *cert. denied*, 555 U.S. 1050 (2008). And it is axiomatic that this argument must have been brought to the attention of the trial court or it is waived. *See* Tex. R. App. P. 33.1(a).

Further,

[a] point of error raised for the first time in an amended or supplemental brief is not normally considered to be properly presented. The rule refers to the orderly and timely presentation of issues on direct appeal to a court of appeals. The decision to consider new matter is left to the sound discretion of the court and the interest of the justice.

*Skillern v. State*, 890 S.W.2d 849, 882 (Tex. App.—Austin 1994, pet. ref'd) (citations omitted). We decline to exercise our discretion to consider this new matter, which Blackmon has waived in any event.

## VI. Conclusion

Having overruled both of Blackmon's issues, we affirm the trial court's judgments.

PER CURIAM

PANEL:  MCCOY, J.; LIVINGSTON, C.J.; and WALKER, J.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  April 5, 2012