

# IN THE
# TENTH COURT OF APPEALS

### No. 10-12-00038-CR

**LEON SAMPLE, JR.,**

                                                                                **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                                                                **Appellee**

**From the 54th District Court**
**McLennan County, Texas**
**Trial Court No. 2011-1847-C2**

## MEMORANDUM OPINION

A jury convicted Appellant Leon Sample, Jr. of burglary of a habitation and assessed his punishment, enhanced by prior felony convictions, at life imprisonment. The trial court ordered that Sample's sentence in this case "shall run consecutively and shall begin only when the judgment and sentence in the following case has ceased to operate: 031-9901-2 OUT OF THE 297TH DISTRICT COURT IN TARRANT COUNTY TEXAS." This appeal ensued.

### Motion to Suppress Confession

In his first issue, Sample contends that the trial court abused its discretion by denying his motion to suppress his confession. We review a trial court's ruling on a motion to suppress

evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007). In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24-25 (Tex. Crim. App. 2007); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000), *modified on other grounds by State v. Cullen*, 195 S.W.3d 696 (Tex. Crim. App. 2006). Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor; and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Montanez v. State*, 195 S.W.3d 101, 108-09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652-53 (Tex. Crim. App. 2002). But when application-of-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's rulings on those questions de novo. *Amador*, 221 S.W.3d at 673; *Johnson*, 68 S.W.3d at 652-53.

When reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *Wiede*, 214 S.W.3d at 24; *Kelly v. State*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those fact findings. *Kelly*, 204 S.W.3d at 818-19. We then review the trial court's legal ruling de novo unless its explicit fact findings that are supported by the record are also dispositive of the legal ruling. *Id.* at 819.

Before trial, Sample filed a motion to suppress his confession, arguing that it was

involuntary under the Due Process Clause, *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and articles 38.21 and 38.22 of the Code of Criminal Procedure because the detectives obtained the confession by engaging in coercive tactics, trickery, and deception. The trial court held a hearing on the motion. At the hearing, Sample testified that he was arrested on a burglary-of-a-habitation warrant and was taken to the Waco Police Department to be interrogated. When he arrived, he was taken to a room furnished with just a table and some chairs. He remained handcuffed and waited by himself for a few minutes for an officer to return. Sample stated that he was read his *Miranda* warnings. He was then interrogated by two unarmed detectives. Sample said that he was intimidated by the detectives; however, he acknowledged that this was not the first time that he had been interrogated by two officers and that the detectives made no verbal threats to him. Sample said that when the detectives got mad, they raised their voices but did not stand up; the detectives just talked to him.

Sample testified that the interrogation lasted about one hour and that he was handcuffed the entire time. Sample said that the handcuffs were uncomfortable and "too tight on [his] wrists." He was trying to get through the interrogation quickly, and, at the end of the interrogation, the detectives had to adjust the handcuffs because they were so tight. The detectives gave him some water to drink at the beginning of the interrogation and again about halfway through the interrogation, but they had to "feed it" to him because of the handcuffs.

Sample testified that the detectives talked to him about the victims of the crimes and tried to appeal to his sympathies by telling him that the victims needed closure. The detectives also suggested that, if he confessed to the crime, they would leave his nephew, who was involved in one of the burglaries, alone. Sample said that he felt some pressure and coercion about that. On cross-examination, however, Sample acknowledged that the detective actually said that Sample

was building credibility so that if he told the detectives that his nephew had nothing to do with one of the burglaries, they would believe him. Sample stated that he also asked about the range of punishment and that the detectives told him burglary of a habitation in his case was a second-degree felony and that he was looking at five to ninety-nine years or life in prison. He felt like they were promising him more favorable treatment if he cooperated with them.

Sample testified that he felt like, taking all these things into consideration, the statement he gave to the police was coerced and that he made it involuntarily. During the course of the interrogation, Sample admitted to being involved in some burglaries but claimed that he made the admission under coercion. On cross-examination, however, Sample stated that he lied to the police in his statement to them. A video recording of the interrogation was admitted into evidence.

Waco Police Detective Javier Martinez testified that he interrogated Sample with Detective Kellum. Detective Martinez stated that Sample was handcuffed for the entire interview because his criminal history indicated that he was a violent individual. Sample's criminal history included several counts of aggravated robbery with a deadly weapon, an attempt to commit capital murder, a rape, and others. Detective Martinez acknowledged that he and Detective Kellum may have loosened Sample's handcuffs at the end of the interrogation because they were tight. Detective Martinez also said that they gave Sample water twice during the interview.

Detective Martinez testified that Sample initially denied that he had done anything but, within the first three to four minutes, Sample began confessing. Detective Martinez stated that there was no excessive force and that it was a standard interview except for the handcuffs. Nothing that day led Detective Martinez to believe that Sample felt coerced, pressured, or

threatened by him and Detective Kellum.

The trial court denied Appellant's motion to suppress and made the following findings of fact and conclusions of law:

1. That Leon Sample, Jr. was arrested pursuant to a validly issued warrant for burglary of a habitation.

2. That Detective Kellum and Detective Martinez of the City of Waco Police Department conducted an interrogation of Leon Sample, Jr. about the burglary.

3. That Detective Kellum and Detective Martinez read Leon Sample, Jr. the Texas Statutory Warnings before beginning the interrogation.

4. That detectives kept Leon Sample, Jr. handcuffed during the interrogation because they were concerned for their safety.

5. That Leon Sample, Jr. was not coerced into making any statements during the interrogation.

6. That Leon Sample, Jr. did not tell the detectives his handcuffs were uncomfortable during the interrogation.

7. That detectives had no reason to suspect or know Leon Sample, Jr. was being caused any discomfort by being handcuffed.

8. That Leon Sample, Jr. asked for a drink several times during the interrogation and each time the detectives provided him with water.

9. That detectives did not promise Leon Sample, Jr. any special treatment in sentencing if he confessed to the burglary and that the detectives told him they had no control over sentencing.

10. That Leon Sample, Jr. voluntarily and without coercion made a statement to the detectives that he was involved in the burglary he was accused of committing.

11. That once the interrogation had ended, Leon Sample, Jr. asked for the detectives to adjust his handcuffs and they adjusted the handcuffs immediately.

12. That Leon Sample, Jr. incurred no injury as a result of being handcuffed during the interrogation.

13.    That there is nothing in the video recording of the interrogation to indicate that Leon Sample, Jr.'s statements were made because of coercion by the detectives.

14.    That Detective Javier Martinez is a credible witness, and the Court accepts as true his testimony regarding his observations of the defendant and his conversations with the defendant.

The Court therefore finds and concludes beyond a reasonable doubt, from the above facts, as a matter of law and fact, that Defendant's statements during the interrogation were not coerced. Defendant was arrested pursuant to a valid warrant and was interrogated by Detective Kellum and Detective Martinez. The detectives left the Defendant's handcuffs on during the interrogation because, based on the Defendant's criminal record, they believed he was dangerous and they were concerned for their own safety. The detectives had no reason to believe or know the Defendant was uncomfortable during the interrogation and they obliged all requests he made during the interrogation. Once the Defendant asked the detectives to adjust his handcuffs, the detectives immediately adjusted the handcuffs. The detectives did not use coercion or force to cause the Defendant to make any statements.

Article 38.21 of the Code of Criminal Procedure provides: "A statement of an accused may be used in evidence against him if it appears that the same was freely and voluntarily made without compulsion or persuasion, under the rules hereafter prescribed." TEX. CODE CRIM. PROC. ANN. art. 38.21 (West 2005). A defendant may claim that his statement was not freely and voluntarily made, and thus may not be used as evidence against him, under several different theories: (1) article 38.22, section 6—general voluntariness; (2) *Miranda*, as expanded in article 38.22, sections 2 and 3; or (3) the Due Process Clause. *Oursbourn v. State*, 259 S.W.3d 159, 169 (Tex. Crim. App. 2008).

A statement may be involuntary under the Due Process Clause or *Miranda* only when there is police coercion or overreaching. *Id.* at 169-70. Trickery or deception does not make a statement involuntary unless the method was calculated to produce an untruthful confession or was offensive to due process. *Creager v. State*, 952 S.W.2d 852, 856 (Tex. Crim. App. 1997). The court of criminal appeals in *Oursbourn* noted that the United States Supreme Court in

*Colorado v. Connelly* collected cases in which courts found statements involuntary under *Miranda* or the Due Process Clause. *Oursbourn*, 259 S.W.3d at 170 (citing *Colorado v. Connelly*, 479 U.S. 157, 163 n.1, 107 S.Ct. 515, 520 n.1, 93 L.Ed.2d 473 (1986)). These cases involve police overreaching and involve fact scenarios such as the following:

> (1) the suspect was subjected to a four-hour interrogation while incapacitated and sedated in an intensive-care unit; (2) the suspect, while on medication, was interrogated for over eighteen hours without food, medication, or sleep; (3) the police officers held a gun to the head of the wounded suspect to extract a confession; (4) the police interrogated the suspect intermittently for sixteen days using coercive tactics while he was held incommunicado in a closed cell without windows and was given limited food; (5) the suspect was held for four days with inadequate food and medical attention until he confessed; (6) the suspect was subjected to five days of repeated questioning during which police employed coercive tactics; (7) the suspect was held incommunicado for three days with little food, and the confession was obtained when officers informed him that their chief was preparing to admit a lynch mob into the jail; (8) the suspect was questioned by relays of officers for thirty-six hours without an opportunity for sleep.

*Id.* at 170-71 (footnotes omitted).

Sections 2 and 3 of article 38.22 apply to an accused's custodial-interrogation statements and provide that only "warned and waived" statements may be admitted. *Id.* at 171; *see* TEX. CODE CRIM. PROC. ANN. art. 38.22, §§ 2, 3 (West Supp. 2013). That is, an accused's custodial-interrogation statement is not admissible unless, before making the statement, he received the warnings provided in article 15.17 or article 38.22, section 2(a) or section 3(a) (which incorporate the requirements of *Miranda*), and he knowingly, intelligently, and voluntarily waived those rights. *Oursbourn*, 259 S.W.3d at 171-72.

Under the Court of Criminal Appeals' precedents, section 6 of article 38.22 applies to both an accused's custodial and non-custodial statements. *Id.* at 171. Claims of involuntariness under article 38.22, section 6 can be, but need not be, predicated on police overreaching of the sort required under due-process analysis. *Id.* at 172. Under articles 38.21 and 38.22, section 6,

we may consider, in addition to any allegedly coercive police conduct, factors such as the suspect's youth, intoxication, mental retardation, or other disability that would not raise a federal due-process claim. *Id.* at 172-73. Under articles 38.21 and 38.22, fact scenarios that can raise a state-law claim of involuntariness include the following:

> (1) the suspect was ill and on medication and that fact may have rendered his confession involuntary; (2) the suspect was mentally retarded and may not have "knowingly, intelligently and voluntarily" waived his rights; (3) the suspect "lacked the mental capacity to understand his rights"; (4) the suspect was intoxicated, and he "did not know what he was signing and thought it was an accident report"; (5) the suspect was confronted by the brother-in-law of his murder victim and beaten; (6) the suspect was returned to the store he broke into "for questioning by several persons armed 'with six-shooters.'"

*Id.* (footnotes omitted). "'Voluntariness' under both constitutional and state law doctrines is to be measured according to the totality of the circumstances." *Smith v. State*, 779 S.W.2d 417, 427 (Tex. Crim. App. 1989).

Sample first argues that the trial court abused its discretion in determining that his confession was not coerced because his testimony was largely uncontroverted. To support this proposition, Sample cites *Harville v. State*, 591 S.W.2d 864, 867 (Tex. Crim. App. [Panel Op.] 1979), which provides, "Whenever the defendant's testimony indicates that he made a confession as a result of coercive acts and such testimony is uncontradicted, then the confession is inadmissible as a matter of law." But some of Sample's testimony is disputed by Detective Martinez's testimony and the video recording of the interrogation. Furthermore, as explained more fully below, Sample's testimony itself does not indicate that his confession was the result of coercive acts. Therefore, *Harville* is distinguishable.

Sample next argues that his statement was involuntary under *Miranda* and the Due Process Clause because of the following alleged police misconduct:

(1) the detectives handcuffed him too tightly and kept him handcuffed in that

manner for over an hour; (2) they impermissibly appealed to his sympathies; (3) they impliedly threatened to arrest his nephew if he did not confess; (4) they misled him about the potential punishment range; and (5) they implicitly promised that he would receive more favorable treatment if he confessed.

We disagree. First, Detective Martinez explained at the hearing why it was necessary for them to keep Sample handcuffed during the interrogation. The record also indicates that the first time Sample complained about the handcuffs was after he had already confessed and that, when Sample complained, the detectives immediately adjusted the handcuffs to make him more comfortable. Second, an interrogator may play on the suspect's sympathies or explain that honesty might be the best policy for a criminal who hopes for leniency so long as the suspect's decision to confess is a product of his own balancing of competing considerations. *Mason v. State*, 116 S.W.3d 248, 260 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd) (citing *Miller v. Fenton*, 796 F.2d 598, 605 (3d Cir. 1986)). Here, the detectives' mere statements to Sample that the victims needed closure were not so manipulative or coercive that they deprived Sample of his ability to make an unconstrained, autonomous decision to confess. Third, Sample acknowledged on cross-examination, and the video recording confirmed, that the detectives did not threaten to arrest his nephew if he did not confess. Rather, the detective actually said that Sample was building credibility so that if he told the detectives that his nephew had nothing to do with the burglaries, they would believe him. Fourth, the detectives did tell Sample that he was looking at a punishment range of five to ninety-nine years or life in prison even though burglary of a habitation is a second-degree felony punishable by only two to twenty years' imprisonment. *See* Tex. Penal Code Ann. §§ 12.33, 30.02(c)(2) (West 2011). Sample, however, was subject to habitual felony offender enhancement, which enhanced the punishment range to twenty-five to ninety-nine years' or life imprisonment. *See id.* § 12.42(d) (West Supp. 2013). And Sample did in fact receive punishment of life imprisonment. Fifth, the detectives never told Sample during

the interrogation that they were promising him any favorable treatment if he confessed. Rather, they told him that they could not promise him anything. They would only put in their reports that he cooperated with them. We therefore conclude that, based on the totality of the circumstances, the trial court did not abuse its discretion in concluding that Sample's statement was voluntarily given under *Miranda* and the Due Process Clause.

Finally, Sample argues that his statement was involuntary under article 38.22 because of the alleged police misconduct identified above and because of other coercive aspects of the interrogation, including: "(1) the fact that Sample felt intimidated by the presence of two detectives conducting the interrogation; and (2) the humiliation he felt by having to be given drinks of water." We again disagree. We have already discussed the alleged police misconduct above. Regarding Sample's testimony that he felt intimidated by the presence of two detectives conducting the interrogation, we note that he acknowledged that this was not the first time that he had been interrogated by two officers. *See Green v. State*, 934 S.W.2d 92, 100 (Tex. Crim. App. 1996) (stating that prior experience with criminal justice system weighs in favor of finding appellant's confession voluntary). Moreover, Sample did not testify that he felt humiliated by having to be given drinks of water. In fact, he did not say how he felt about it in his testimony. He merely stated that the detectives gave him water to drink but that they had to "feed it" to him because of the handcuffs. We therefore conclude that, based on the totality of the circumstances, the trial court did not abuse its discretion in concluding that Sample's statement was voluntarily given under article 38.22.

Because we have concluded that the trial court did not abuse its discretion in concluding that Sample's statement was voluntarily given, we hold that the trial court did not err in denying Sample's motion to suppress his confession. We overrule Sample's first issue.

**Sufficiency of the Evidence**

In his second issue, Sample contends that the evidence is insufficient to prove that he is the person who committed the burglary. Sample concedes that to prevail on this issue, he must have prevailed on his first issue challenging the trial court's suppression ruling. Because we have held that the trial court did not err in denying Sample's motion to suppress his confession, we hold that the evidence is sufficient to establish that he was the person who committed the burglary. *See Lucio v. State*, 351 S.W.3d 878, 894 (Tex. Crim. App. 2011) (stating standard of review for sufficiency issue). We overrule Sample's second issue.

**Imposition of Cumulative Sentences**

In his third issue, Sample contends that the imposition of cumulative sentences violated his statutory right to jury sentencing under article 37.07 of the Code of Criminal Procedure. Sample argues that although he elected to have the jury assess his punishment, the trial court was allowed to increase his sentence by ordering that it run consecutively with a Tarrant County sentence. Sample states, "[T]his effectively removed from the jury the final determination regarding the length of his sentence even though a defendant has the absolute statutory right for the jury to determine the length of his sentence."

Sample acknowledges that the court of criminal appeals has held that a trial court's authority to order cumulative sentences does not conflict with the right to jury sentencing under article 37.07. *See Johnson v. State*, 492 S.W.2d 505, 507 (Tex. Crim. App. 1973); *see also Barrow v. State*, 207 S.W.3d 377, 379-381 (Tex. Crim. App. 2006). Sample nevertheless contends that the issue should be revisited because "the content and application of article 37.07 have changed significantly" since the court of criminal appeals' holding. But as an intermediate court of appeals, we are bound to follow the precedent of the court of criminal appeals. We

therefore overrule Sample's third issue.

Having overruled Sample's three issues, we affirm the trial court's judgment.


REX D. DAVIS
Justice

Before Chief Justice Gray,
      Justice Davis, and
      Justice Scoggins
Affirmed
Opinion delivered and filed March 27, 2014
Do not publish
[CRPM]